Petruzzi *v.* A. Levy & Co., Appellant.

Argued March 8, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Paul H. Maxey,* and with him *Fred A. Hughes,* for appellant.

*Roger J. Dever,* for appellee.

Opinion by Keller, J., April 17, 1933:

Michael Petruzzi, the claimant's husband, was hurt by an accident, in the course of his employment with the defendant, on December 14, 1928. He sustained a very bad fracture of the left arm, near the wrist, and

a contusion of the forehead. A deformity developed at the site of the fracture and on May 7, 1929 he returned to the hospital, the bone was broken again and the fragments twisted and turned to get a better position and then the arm was reset and put in a cast. On May 21st following he was found by a doctor to be suffering from complete paralysis of the left arm, left leg and facial muscles, and on September 8th next he died from what the attending physician, at the hearing in this proceeding, diagnosed as a cerebral hemorrhage, or apoplexy, caused by an "embolism, a thrombus developing at the site of the fracture."

Two physicians, called by the defendant, who had not seen or treated the decedent, testified that it was physically impossible for an embolism developing at the site of the fracture to have caused the hemorrhage. Another physician, called by defendant, who had examined the decedent in March, 1929, and found the deformity in his arm, testified that the embolus might have come from any injury; that the possibility that it came from a valve of the heart,—if he had heart disease,—was greater than that it came from the fracture at the wrist; while a fourth physician called by defendant, who examined the injured employee on June 26, 1929, after his initial paralysis, and found a mitral systolic heart murmur, not acute however, testified, on direct examination, that it would have been "*difficult* for an embolus to pass from an injury to the left wrist into the brain and cause paralysis."

In rebuttal an expert physician called by the claimant testified that he did not agree with the two physicians called by defendant who said that it was impossible for an embolism developing at the site of the fracture to have caused the paralysis and death; that in his opinion "the start of the thrombosis was an embolism that broke away from the inflammatory tissue around the site of the fracture of the

left wrist. This embolus was carried in the venous stream through the veins of the forearm, then into the right auricle, then the right ventricle, through the pulmonary artery into the venous capillaries of the lung. Here it may have been arrested for a short time, but eventually the embolus penetrated the capillary net work and was then carried over to the left auricle, through the mitral opening into the left ventricle, into the aorta, carotid artery, and lodging in a bifurcation of a small artery in the brain as evidenced by the first stroke reported in the notes. This embolus having lodged, now became a thrombosis with increase in the pathologic changes resulting from extension of the thrombus that later eventuated in the second stroke and from which the patient died." This testimony, as well as that of the attending physician, complied with the strictest requirements laid down by the Supreme Court in such cases. It is true this expert witness subsequently testified that the embolism might have been the result of the heart condition, but said, that in his opinion, "the fractured wrist with the re-breaking by manipulation was the most likely cause of the embolus in this instance," and explained in detail (record pp. 112-a and 113-a) why he ascribed it to the fracture and the re-breaking rather than the heart murmur; but this did not contradict, or even weaken, his former testimony. He supported his conclusions by references to medical treatises of high authority.

The question was one of fact for the board to decide and they having decided it in favor of the claimant, and there being, as we have shown, competent medical testimony to support their finding, we have no authority to interfere with it.

The assignments of error are overruled and the judgment is affirmed at the costs of the appellant.