## Morris, Appellant, *v.* Lehigh Valley Coal Company.

Argued March 2, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Roger J. Dever,* for appellant.

*S. W. Rhoads*, with him *P. F. O'Neill* and *F. W. Wheaton*, for appellee.

PER CURIAM, April 16, 1936:

Claimant's husband, Robert Morris, on November 20, 1933, while carrying a set of dies in the course of his employment with the defendant, slipped and suffered a strain in the region of his right groin. He noticed a lump there and, thinking it was a hernia, consulted the company's physician, who, three days later, operated on him for femoral hernia. It then developed that it was not a hernia but a varicose or swollen vein in the opening to the long saphenous vein, which is the principal vein on the inner side of the leg. All the doctors called as witnesses in the case agreed that the varicose or swollen condition of this vein must have existed for a long period of time and was not caused by the strain above referred to, but the testimony warrants the finding that the employee had not previously noticed the lump or swelling, which had the appearance of a hernia. Had the operating surgeon been informed that the lump had existed for some time he said he would not have diagnosed it as a hernia, nor operated upon it.

On December 15, 1933, twenty-two days after the operation, Morris died from a pulmonary embolism or thrombosis in the right lung, which is a clot in a blood vessel of the lung obstructing the circulation of the blood.

The physicians in the case, including Dr. Bixby, called by claimant, testified that, in addition to the swollen vein which was operated on, practically the whole of the long saphenous vein of Morris' right leg, extending from the ankle to the femoral vein, near the site of the operation, was varicose or swollen; and that varicose veins are frequently thrombosed or form clots which obstruct the circulation of the blood; and none of the physicians would say that in his professional opinion the blood clot

which caused Morris' death was caused by the operation rather than by the varicose veins not operated on. The final statement of Dr. Bixby, claimant's witness, was that either the operation or the varicose veins, apart from the operation, might have been responsible for the clot which obstructed the blood circulation, and that he could not tell which was the cause; that two possible causes were present and it was impossible for him to differentiate which one of those causes was responsible for the embolism. This being the case, there being two factors which might have been responsible for the blood clot, for only one of which the defendant employer was responsible, it was not the province of the referee or workmen's compensation board, any more than it would have been the province of a jury in a personal injury case, to *guess* which of the two caused the embolism, or obstruction to the blood circulation, which resulted in Morris' death.

The operation to the vein near the femur or thigh and the obstruction of the blood vessel in the lung causing death were not so immediately and directly or naturally and probably connected together[1] that a jury in a personal injury case, or the fact finding body in a workmen's compensation case, in the circumstances here present, would be permitted to find without the assistance of expert medical opinion, that the obstruction was caused by or was the result of the operation; for, in the absence of medical opinion, a layman would not be able to infer the relation of cause and effect between them (Kent v. General Chemical Co., 285 Pa. 34, 131 A. 588) ; and the medical opinion presented fell short of the requirement under the rule now in force, (Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 206, 133 A. 256), viz, that the physician or surgeon, in such circumstances, must testify, "not that the condition of claimant might have, or even

---

[1] See discussion of cases in Davis v. Davis, Director General, 80 Pa. Superior Ct. 343, pp. 345 to 347.

496

probably did, come from the accident, but that 'in his professional opinion the result in question came from the cause alleged'." In this respect the evidence differed from the case of Petruzzi v. Levy, 108 Pa. Superior Ct. 566, 165 A. 543, relied on by appellant, for there the physician testified that in his professional opinion the embolism resulting in death developed at the site of the fracture of the employee's arm and was the result of the fracture.

The judgment is affirmed.