Dorsch *v.* Fisher Scientific Company et al.,
Appellants.

Argued April 11, 1939.

Before Keller, P. J., Cun-
ningham, Baldrige, Stadtfeld, Parker, Rhodes and
Hirt, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*Clarence A. Patterson,* for appellee.

OPINION BY KELLER, P. J., June 27, 1939:

This is a workmen's compensation case.

The judgment entered in the court below on the compensation award to the claimant must be reversed and the award set aside for two reasons: (1) For failure of the claimant to give notice to the employer of the occurrence of the injury within ninety days after its occurrence, as required by statute,[1] unless the employer had actual knowledge of the occurrence of the injury within that time, which was not here shown; (2) because of lack of evidence to show that the loss of claimant's right eye was caused by the accident alleged in the claim petition. Either one would require a reversal of the judgment.

1. The purpose of the amendment to sec. 311 of the Workmen's Compensation Act by the Act of 1927 was to protect the employer against stale claims for accidental injuries, of which he had no knowledge, made after the opportunity had passed to examine into and

[1] Section 311 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by Act of April 13, 1927, P. L. 186, p. 193.

sift them. Unless the notice contemplated by the Act is given the employer within ninety days of the occurrence of the injury or the employer has actual knowledge of it within that time, the act provides that "no compensation shall be allowed." This is mandatory. See *Beck v. Franklin Glass Co.*, 136 Pa. Superior Ct. 204, 7 A. 2d 600.

Section 312 of the Workmen's Compensation Act provides that the notice of the occurrence of the injury, to be given the employer shall be substantially in the following form:

"To (name of employer).

"You are hereby notified that an injury of the following character ( ...... ) was suffered by (name of employe injured), who was in your employment at (place), while engaged as (kind of employment) on or about ( ) day of ( ), Anno Domini ( ) and that compensation will be claimed therefor.

"Date: Signed ( )

"But no variation from this form shall be material if the notice is sufficient to inform the employer that a certain employe, by name, received an injury, the character of which is described in ordinary language, in the course of his employment on or about a time specified and at or near a place specified."

The notice may be given personally or by registered mail[2] to the employer, (or if a corporation, to the president, vice-president, secretary or treasurer thereof) or to the manager or superintendent in charge of the works or business,[3] or the foreman[4] of the injured em-

---

[2] Sec. 313 of the Workmen's Compensation Act of 1915, P. L. 736, p. 747.

[3] *Schueller v. Armour & Co.*, 116 Pa. Superior Ct. 323, 330, 176 A. 527; Sec. 313 of Act of 1915, P. L. 736, p. 747.

[4] *Uditsky v. Krakovitz*, 133 Pa. Superior Ct. 186, 2 A. 2d 525.

ployee's department, or the doctor [5] engaged by the employer to treat and care for injuries to workmen, and to whom the injured employee was sent for treatment following the injury; but it must be some one whose position justifies the inference that authority has been delegated to him by the employer, as his representative, to receive a report or notice of such accidental injury. Knowledge of the occurrence of the injury on the part of any of said agents is declared by section 313 of the Act to be knowledge of the employer.

It is undisputed that the claimant worked for the defendant only three days, March 10, 11 and 12, 1936; that he was discharged on March 12; that although the alleged accident happened on March 12, between four and five o'clock, ("within an hour of quitting time"), he did not mention it to his employer, or the foreman in charge of the shop, before he left. His account of the accident and the notice given was as follows: "I was cutting some small castings in half, and there was not enough stock on there for the regular cutting-off tool, so I ground down a bit, and that gouged in and broke, and something hit me in the eye, and I went like this (indicating rubbing his right eye) and I thought it was out, and it watered a little bit, so I kept on working, and it didn't bother me until that evening at supper time, and there was a sort of hazy spot on that corner (indicating right corner) and I bathed it that night, and did that for several days and it didn't seem to be getting any worse so on that Tuesday [March 17] I was called to get my tools and they said I didn't have to come in the shop and they sent a boy to the office with them, and the *fellow at the desk—I told him I thought I had put my eye on the*

---

[5] *Klimovige v. Hazle Brook Coal Co.*, 111 Pa. Superior Ct. 399, 170 A. 357; *Younch v. Pittsburgh Terminal Coal Corp.*, 118 Pa. Superior Ct. 396, 180 A. 30.

*bum there, but I said whether strained or not, I didn't know,* and he started telling me a story about his eyes, and my tools came down and I left." [Italics supplied]. He admitted that he did not tell his foreman, Mr. Hayden, of the alleged accident either on the day of its occurrence or five days later, when he got his tools.

When he first consulted his physician, Dr. Hughes, claimant thought he needed a pair of glasses. Dr. Hughes sent him to see Dr. McKee (an ophthalmologist) on April 2, and claimant told him (Dr. McKee) that he thought his eye was *strained*—"I didn't think that small piece could cause it. *It happened to me so often before."* Apparently up to this time, claimant had told nobody of an accidental injury. He thought the eye was strained. His first *report* of any *accident* was when the claim petition was prepared, which was on June 24, 1936, though not filed until July 9, 1936. Even on his admission to the hospital on May 28, 1936, he reported no accident and there was then no evidence on the eye of any cut or injury or any physical signs of injury to the eye. The history of an injury to the eye—"something striking his eye"—was not given the doctor who operated on the eye, (Dr. Buvinger), until sometime later.

Claimant later testified that the man to whom he spoke when he went to get his tools was a clerk; he described his appearance and said he did not know whether he was the man to whom an accident should be reported. Norman McSwiggan, who testified as a witness for defendant, stated that he was the person to whom claimant applied for his tools; that he called upstairs and had a man send the box of tools down and then delivered it to claimant; that he was employed as a salesman in the show room and had no other duties than selling; that he had no control or authority over any other employees and it was no part of his duties to take care of accident reports; that claimant never

reported to him that he had sustained an injury to his eye upstairs, or had any conversation with him respecting his eye; but in so far as his testimony differed from claimant's, in view of the award in his favor, we have to accept the latter's version. The difficulty with claimant's case, however, is that he not only failed to show that the clerk to whom he spoke was the "manager or superintendent in charge of the works or business in which the accident occurred" (sec. 313 of the Act of 1915, P. L. 736, p. 747), or held a position which justified the inference that authority had been delegated to him by the employer, as his representative, to receive a report or notice of accidental injury, but there is not a word of testimony in the case, including the testimony of claimant himself, that in his talk with the clerk,—McSwiggan—he told him that he had "received an injury ...... described in ordinary language" (Sec. 312)—that is, had an accident in which his eye was injured while in the course of his employment. His statement, "I told him I thought I had put my eye on the bum, but, I said, whether strained or not, I didn't know," gave no notice of an *accidental injury received in the course of his employment,* within the requirements of the Workmen's Compensation Act, sections 311-313. It was equally as consistent with a strain from close use. This is especially the case, where as here, the claimant did not attribute the condition of his eye to an accident until several months after he left this employment and had been operated on for glaucoma, or think that condition was the result of the foreign body, which he now alleges got in his eye on March 12, 1936.

As notice of the occurrence of an accident and the resultant injury to claimant's eye was not given the employer until after the filing of claimant's petition for compensation on July 9, 1936, which was more than ninety days after the occurrence of the alleged injury,

it was too late, under the provisions of the Act of April 13, 1927, and no compensation can be allowed.

2. Furthermore, the medical testimony fails to connect the acute inflammatory glaucoma, followed by detached retina, from which claimant was suffering, and for which he was operated on, resulting in the loss of his eye, with the accident which he says happened on March 12, 1936, when something hit him in the eye. Glaucoma,[6] followed by detached retina, it was testified, can be caused by accident; but it can come from other causes, too.[7] Claimant's expert physician, (Dr. Buvinger) who testified as a witness for him, said that he was not able to give an opinion as to any causal connection between the alleged injury and the condition of the eye as he found it.

This is not the case of a well-established accidental injury being followed by results that are so directly and immediately, or naturally and probably, attributable to the injury that the causal connection between them does not depend upon the testimony of medical experts, but may be inferred by laymen, as in *Davis v. Davis, Director General*, 80 Pa. Superior Ct. 343; *Grobuskie v. Shipman Koal Co.*, 80 Pa. Superior Ct. 349, 352; *Johnson v. Valvoline Oil Co.*, 131 Pa. Superior Ct. 266, 273, 200 A. 224. On the other hand, see *Saroka*

---

[6] "Glaucoma—a disease of the eye, characterized by increased tension of the globe and gradual impairment or loss of sight," Shorter Oxford Dictionary; "A condition of the eye marked by increased tension within and resulting in impairment of vision or ultimately in blindness," Webster's Collegiate Dictionary.

[7] Dr. Buvinger, a medical witness for claimant testified (17a): "Glaucoma can be caused by accident. Glaucoma also in the form which he has, that is, an acute inflammatory condition, can come from a jarring of the body. We have had two cases within the last year in which the persons were in automobile accidents and with no particular injury of the eye, but a few hours after the accident developed acute inflammatory glaucoma; and then we have glaucoma coming without any reason that we can find. There must be a reason, but you cannot always find it."

*v. Phila. & R. C. & I. Co.,* 87 Pa. Superior Ct. 503, 506; *Morris v. Lehigh V. Coal Co.,* 121 Pa. Superior Ct. 493, 495, 184 A. 266; *Anderson v. Baxter,* 285 Pa. 443, 447, 132 A. 358. In *Benci v. Vesta Coal Co.,* 131 Pa. Superior Ct. 435, 200 A. 308, cited by claimant, there was expert testimony supporting the award, and we said: "The board, as it had a right to do, accepted the opinion of the claimant's expert in preference to that of the expert called by defendant."

As glaucoma is not always due to an injury caused by a foreign body hitting the eye, but may be due to other causes not connected with such an accidental injury, and the medical witnesses were unable to testify that in their opinion the glaucoma and detached retina from which claimant suffered were caused by the particle which, he said, hit his eye on March 12, 1936, but which left no traces or evidence of injury to the eye—and he himself said he had had many such occurrences—a board of laymen will not be permitted to guess that the glaucoma which resulted in the loss of his eye on May 29, 1936 was caused by the particle which he says entered his eye on March 12, 1936, but to which he himself gave no thought or concern for several months.

For both reasons, the award of compensation cannot be allowed to stand.

The judgment is reversed and is here entered for defendants.