Beck *v.* Franklin Glass Corporation et al., Appellants.

Argued April 20, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

206

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*William D. Markel,* for appellee.

OPINION BY BALDRIGE, J., July 1, 1939:

Leonard Beck filed a claim for compensation, wherein he alleged that on June 3, 1936, he fell, causing a fracture of a vertebra of the spinal column and as a result thereof he is totally disabled; that he served notice of his injury upon his employer on June 22, 1936. The referee and the board granted an award for total disability, which was sustained by the court of common pleas.

In this appeal taken from the judgment entered on the award, the appellants contend that there was no competent evidence (1) to establish legal notice to the defendant of an accident; (2) to sustain the finding that claimant's disability was caused by an accident within the meaning of the Workmen's Compensation law.

There was a subordinate question that the evidence did not establish the happening of an accident on June 3d. The claimant made conflicting statements as to the date of the alleged accident to attending physicians and the hospital authorities, but we will confine our discussion to what we regard the more serious problems confronting us, first directing our attention to the adequacy of the notice.

[1] Section 311 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186 (77 PS §631), provides that notice of the occurrence of an injury shall be given to the employer within fourteen days after the accident, "but if the employe ....... shall show that his delay in giving notice was due to his mistake or ignorance of fact or of law, or to his physical or mental inability, or to fraud, misrepresentation or deceit, or to any other reasonable cause or excuse, then compensation shall be allowed, unless the employer shall show that he did not know, and by reasonable diligence could not have learned, of the accident, and that he was prejudiced by the delay; in which case he shall be relieved to the extent of such prejudice; and, unless such knowledge be obtained, or notice given, within ninety days after the occurrence of the injury, no compensation shall be allowed."

The claimant admits that he personally made no report and gave no notice of his injury to his employer. The claimant's wife testified that at the request of her husband she went to the office of his employer on July 29, 1936, and informed Mr. Flack, defendant's paymaster, that Dr. Jones had stated that her husband's illness "could have been the result of an accident sustained in the past." She testified further: "Q. Where did you go to see Mr. Flack and why? A. To tell them about him being sick. My husband wanted me to go. ...... Q. What did you tell Mr. Flack? A. I told him about him falling. Q. As near as you can, tell us what was said. A. My son did most of the talking, because I was sort of worked up on account of my husband being ready to go to the hospital. My son will tell you ...... Q. Did you tell Mr. Flack when your husband fell? A. I could not tell you that now. I suppose I must have." We might state at this point that the son was not called

---

[1] Later amended by the Act of June 4, 1937, P. L. 1552, §1 (77 PS §631), which was after the hearing.

as a witness. On cross-examination, the wife testified as follows: "Q. You didn't tell him (Flack) then of any injury that Mr. Beck had had at the Plant? A. No, I told him that he told me that he fell. Q. And you didn't tell him when that was supposed to have occurred? A. I didn't go to that particular plant (sic.)"

The query naturally arises whether the information given amounted to such notice of the occurrence of an injury as required by the statute.

Section 312 of the Workmen's Compensation Act (77 PS §632) throws light thereon. It sets forth the form of the notice to be given, but provides that no variation therefrom shall be material "if the notice be sufficient to inform the employer that a certain employe, by name, received an injury, the character of which is described in ordinary language, in the course of his employment on or about a time specified and at or near a place specified."

There was nothing definite said to Mr. Flack concerning the nature of the accident, except that claimant fell, or as to the time or place it occurred. An employer is entitled to be informed of the particulars of an accident so that within a reasonable time an investigation may be made. The first adequate notice given of the time, place and character of the alleged injury was the claim petition filed December 7th, more than six months later. Under the provisions of the statute, which are mandatory, no discretion may be exercised by extending the time in which a notice must be served. If it is not given within ninety days from the date of the accident, the omission is fatal to a claim: *Walatka v. Levin*, 100 Pa. Superior Ct. 489; *Dorsch v. Fisher Scientific Co. et al.*, 136 Pa. Superior Ct. 197, 7 A. 2d 604. In *Berner v. P. & R. C. & I. Co.*, 100 Pa. Superior Ct. 324 331, we called attention to the statement of the author of Skinner's Pennsylvania Workmen's Compensation Law, 2d Ed., p. 220, with which we coincided, that ex-

cuses for delay and failure to give notice of accidents became so varied and numerous that the provision requiring notice to the employer was rendered practically useless, and that the later fixing of the definite time of ninety days was meant, no doubt, to meet this condition.

The learned court below recognized that the testimony was not specific as to when and where the accident occurred, but concluded that the information given was sufficient to put the defendant on notice. We are of the opinion that the character of notice required by the statute was not given within ninety days after the occurrence of the injury.

The second contention of the appellants, viz. that there was no competent testimony to show a causal relation between the alleged accident and the injury, is, in our judgment, even more substantial than the first. The claimant, who was sixty-one years of age at the time of the alleged injury, had been employed for a number of years as a carpenter by the defendant and its predecessor. About 10:30 on the morning of June 3, 1936, while carrying a small tool box, weighing approximately fifteen pounds, and a piece of roofing paper, he slipped on the floor of the grinding shop and fell on his back. At that time he was not aware of any serious injury. He worked the remainder of the day and continued his employment thereafter until Saturday, June 20, 1936, although in the meantime his back gave him trouble. On June 13th he had a badly diseased tooth extracted and thereafter suffered considerable pain in his jaw as well as in his back. On June 21st he was unable to get out of bed and Dr. Jones was summoned. He found that claimant had a marked retention of urine, with pain in his back. After treating him for about a week, the doctor sent him to Pittsburgh to consult kidney specialists. Claimant returned shortly thereafter and on the 2d of July he was taken to the Butler Hospital, where additional teeth

were removed. On July 7th he came home and continued under the care of Dr. Jones, who, the latter part of the month, sent him to the Presbyterian Hospital in Pittsburgh, where he was examined by Dr. Decker and Dr. DeRoy.

Dr. Jones, when asked whether there was any connection between the fall and claimant's condition at the time of his first and last examinations, said: "To be truthful about it, I don't know."

Dr. DeRoy, called by the claimant, testified that when he examined the claimant on the 3d of August Beck stated that he had fallen several months previous and hit his spine. He was complaining of pain in the lower back and of inability to bend without severe discomfort. The examination showed an extensive disease involving a portion of the spine, with large spur formations on certain vertebrae, indicating hypertrophic arthritis, which had been in existence, in his opinion, for a considerable time and was progressive in character. When asked how a fall, such as Beck described, would affect his arthritic condition, Dr. DeRoy stated: "I don't believe that one, or two, or three or more bad teeth would give him a spine such as he has. I believe this is a progressive condition which is a manifestation of increased years which in his case are greater than his actual age. I believe the condition in his back to have become gradually more painful because of the injury, but never having seen him before the accident, or having X-ray, I believe it is impossible to give a definite answer." The doctor stated further that he ruled out in his own mind the question of teeth, "But as far as the fall is concerned, I feel that it *could* be a very definite factor." (Italics supplied.) That testimony is insufficient to support a claim as it cannot be considered equivalent to an expression of a professional opinion that the claimant's condition is due to a fall.

Dr. Decker, called by the defendant, testified that he

examined the claimant at the Presbyterian Hospital on August 13th; that "the history that he gave me is as follows: that about three months ago, he could not fix the exact date, in the afternoon, he was carrying his tools on his shoulder when he slipped, he says, on some plaster on the floor and set down ...... On, or about the 20th of June, he had a tooth extracted and the next day he could not pass urine so he called Dr. Jones ...... He had had several attacks of rheumatism and lumbago in his back, but never serious. He had always had bad teeth and they had been taken out over a period of years. At the time of the examination there were only four left and these were in the lower jaw." This doctor was of the opinion that, as claimant had no particular distress in his spine for a time after the fall and the symptoms did not materialize until several weeks later when he had the teeth extracted, "this fall was a purely incidental thing and had nothing to do with the condition which I found on August 13, 1936."

To the same effect was the testimony of Dr. Ignilzi who had not personally examined the claimant. He expressed the opinion, based upon hospital records, that claimant's condition was due to "a latent arthritis, which was stirred up by the removal of the teeth, associated with destruction and trauma of the soft tissues in the jaw at the time of the removal, which in turn produced a septicemia, which aggravated a then pre-existing condition."

Probably the strongest testimony adduced by the claimant in support of his claim was that of Dr. Bashline, an osteopath, whom the claimant consulted on December 26, 1936. Claimant informed him that he had been injured on June 3d, "slipping on an inclined floor, falling on his back broadside," which was the origin of his trouble. When asked what, in his opinion, the condition of the claimant was, he said: "We—he had a spine injury that we *presumed* was dating back to this time when he said he was injured." (Italics sup-

plied.) This witness stated that claimant's spinal condition, which limited his movements, was due to an injury and arthritis which probably pre-existed, "but the injury no doubt, complicated it." He said further that the arthritic and nephritic condition could have been caused by bad teeth. His testimony was based, however, on the *presumption* that the injury to the spine dated back to the time of claimant's fall.

Testimony that the condition of the claimant might have or most probably did come from the alleged accident is not sufficient. To establish a causal relation between the accident and injury, a medical witness is required to testify unqualifiedly that, in his professional opinion, the injury was attributable to the accident. See *Anderson v. Baxter et al.*, 285 Pa. 443, 132 A. 358; *McLaughlin v. P. H. Butler Co.*, 122 Pa. Superior Ct. 139, 186 A. 190; *Bunnell v. State Workmen's Ins. Fund et al.*, 124 Pa. Superior Ct. 171, 188 A. 411; *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995.

This is a case where the burden is on the claimant to establish, by expert testimony, that his disability is due to the alleged accident, as that matter is not within the knowledge of a lay witness. Without the evidence of medical witnesses, it could not be determined what effect, if any, the fall had on claimant's arthritic condition, with attending complications. We said in *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 49, 167 A. 504, that the compensation authorities are not required in all cases to depend solely on expert medical testimony, but where there is a serious question whether the disability is the result of an accident, unequivocal medical testimony is essential. See, also, *Elonis v. Lytle Coal Co.*, supra. Nor can injuries be inferred simply because of an accident: *Adamchick v. Wyoming Valley Col. Co.*, 332 Pa. 401, 3 A. 2d 377; *Harring v. Glen Alden Coal Co.*, 332 Pa. 410, 3 A. 2d 381.

The overwhelming evidence offered upon the part of the claimant showed that his condition was of long

standing. His wife's testimony indicated that, as she said he had complained and she had treated him for a sore back previous to the injury. He, undoubtedly, was suffering from ailments wholly disconnected with any accident. He was, therefore, required to show that his existing afflictions were aggravated to such an extent that the aggravation became an independent cause of disability: *Bittner v. Saltlick Township*, 109 Pa. Superior Ct. 406, 167 A. 483; *Lipstock v. Haddock Mining Co.*, 117 Pa. Superior Ct. 300, 178 A. 323. This he failed to do. Whether there was legally competent evidence was a question of law for the court: *Loeffler v. Western Electric Co.*, 107 Pa. Superior Ct. 326, 329, 163 A. 322.

We find ourselves constrained to hold that there is no competent evidence in this record to support a finding that claimant's disability is due to an accident within the Workmen's Compensation law.

Judgment is reversed and now entered for defendant.