Query *v.* Allegheny Pittsburgh Coal Company,
Appellant.

Argued April 9, 1940.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

518

William A. Challener, Jr., with him William A. Challener, of Challener & Challener, for appellant.

Frederick Shoemaker, with him William F. Knoell, of Shoemaker & Knoell, for appellee.

OPINION BY RHODES, J., October 2, 1940:

In this workmen's compensation case the referee made an award for total disability which was affirmed by the Workmen's Compensation Board and the court below. Judgment was entered accordingly, and defendant employer has appealed.

Claimant had been employed by appellant since February 15, 1928, as a car repairman, but on October 6, 1936, he was directed to assist in unloading steel rails from a railroad car. He had done such work before. The rails were being unloaded from a flat car with sides about 4½ feet high. The length of the rails varied from 12 to 16 feet, and their weight was from 60 to 80 pounds per yard of length. Each rail was lifted by six men, three at either end, and placed on two rails which leaned against the side of the railroad car, and on which rails the rail being unloaded would slide to the ground. Claimant was the middle man at his end of the rail, a man named Jim Costella being on one side of him and John Lisp on the other. As they were in the act of

throwing a rail from the side of a car, claimant said that "Jim Costella left loose of the rail for an instant when he took a hold of the rail again and it rolled and twisted in our hands," and as this occurred claimant experienced a "severe pain in the breast and arms, followed with a smothering weakness and had to cease work for a few moments." After resting for a few moments he tried to resume work and helped to unload about a half dozen rails when he had to stop. The work of unloading rails had begun a few minutes after 7 a. m., and claimant experienced the pain or sensation described about 10:30 a. m. Thereafter claimant and Lisp went outside the car, and instead of assisting in lifting the rails they engaged in straightening them on the pile as they reached the ground. Claimant testified that he did not straighten more than two rails, that Lisp was on the other end and did the straightening. Afterward claimant "went into the shop to [his] regular work and dragged the day in there doing practically nothing." He quit at 2:30 p. m., the regular time. As soon as he had quit work claimant reported to Dr. G. R. Kennedy. He told Dr. Kennedy what had happened to him in the car, and the doctor, after examining him, according to claimant, said that he "mustn't work," that he "had strained the muscles, ligaments of [his] heart." Claimant was almost 54 years of age, and weighed about 176 pounds at the time of the accident, his height being 5 feet, 10½ inches. On direct examination it appeared that he had worked fairly steadily since being employed by appellant, having lost 4 days in 1932, at which time he had a hemorrhoid removed by Dr. D. H. Parke, and 1 day at another time when he "thought [his] liver or stomach was knocked out." This occurred about the first of June, 1936, and he was treated by Dr. Kennedy. Prior to that he said that he had not had a serious illness for a good many years, the last being typhoid fever, about 40 years before

October, 1936. On cross-examination, however, claimant admitted that he had also had pneumonia about 45 years ago, and "inflammatory rheumatism" at the age of twelve. He admitted also that in May or June of 1936 Dr. Parke had found sugar in his urine, and he lost in weight about 35 pounds between that date and October, 1936.

Claimant's testimony relative to the method of unloading rails, and his collapse in the car was corroborated generally by five fellow workmen who were there at the time. (Costella and Lisp, who, as previously described, had been working on either side of claimant, were not called.) But the testimony of these witnesses did not entirely agree with that of claimant relative to the turning or twisting of the rail. From their testimony it also appears that there was nothing unusual about twisting the rail during the process of unloading; that the twisting of the rail, if anticipated, would not put any more weight than otherwise on those doing the lifting; and that it was often necessary to twist the rails to get them in a proper position in order to throw them out of the car.

On this testimony the referee contented himself with finding that "while the claimant and his co-workers were throwing these rails out of the car, the claimant suffered with a severe pain in his breast followed by a smothering weakness, which caused him to stop working; that at the time of this occurrence the claimant and his co-workers were in the act of throwing a rail over the top of the side of the car when the rail rolled and twisted in their hands." The board affirmed the referee's finding and conclusions. In its opinion the board commented: "The claimant testified, but the referee does not find as a fact, that while throwing one rail out of the car, a co-worker loosened his grasp on the rail, throwing added weight on the claimant, shortly after which the claimant suffered pains in his breast,

followed by a smothering weakness. The referee found that the pain and weakness came upon the claimant while he and his co-workers were throwing the rail over the side of the car, when the rail rolled and twisted in their hands."

A careful review of claimant's testimony does not disclose any statement that whatever happened to the rail threw added weight upon him. Cross-examination of claimant revealed that his work as car repairman involved heavy lifting, such as axles which weighed 155 pounds; these were raised with assistance of another man; car wheels weighing 165 pounds which were lifted by one man but carried by two men; and bags of rock-dust weighing a little less than 100 pounds.

The medical testimony was extensive, five doctors having testified. Drs. D. H. Parke and Harry G. Noah testified for claimant, Drs. J. M. Snyder and Wm. L. Mullins for appellant, and Dr. W. W. G. Maclachlan, an impartial expert, called by the referee. We shall not attempt to give a complete resume of such testimony, but shall make brief reference to some of each of the experts. In view of our conclusion, we think no more is necessary for an understanding of the present status of the case.

Dr. Parke testified that he first treated claimant in 1932, and in 1935 for minor complaints; that claimant gave him history of attacks of rheumatism at the ages of 12 and 14, and a third one about 28 years ago. In 1935 he found no apparent damage to the heart muscle or valves. In May of 1936 he found a small amount of sugar in the urine, but the blood sugar was negative. His blood pressure at that time was 145 over 80. He saw claimant again on October 7, 1936, and found "that he had suffered a vascular accident." Over objection of counsel for appellant, he stated that claimant gave the history of having overlifted on the previous day while at work unloading railroad rails from a flat car.

Dr. Parke insisted that his examinations showed no heart trouble prior to October 7, 1936, and it is clear that his opinion was based partly on that fact and partly on the assumption of a strain from overlifting. He was asked: "Q. So to sum it up you think his heart was all right before October, 1936, then you have the picture of vascular condition followed a year later by mitral stenosis? A. That is right. ...... Q. From the history of the case as you had it and as you have given it and from the testimony of Mr. Query as you have heard it today without any intervening causes other than such as you had and had been given, what in your opinion would cause the bad condition of Mr. Query's heart as you found it on October 7, 1936? A. Considering his history and the findings of 1936 and 1937 taking all in all I feel he did suffer his accident to his heart from overlifting."

Dr. Noah examined claimant on February 3, 1938, and was given a history of the occurrence of October 6, 1936, similar to that given to Dr. Parke. He also was told of rheumatic fever in earlier life, and typhoid fever in childhood. He testified: "It seems quite probable too that this occurrence [on October 6, 1936] was quite probably the cause of the symptoms he had at that time." His opinion of the cause of claimant's disability does not meet the requirements prescribed by the cases where expert testimony is used to show a causal relation between an alleged accident and disability. *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995. Like Dr. Parke, his opinion was based on the premise that claimant's heart was sound before October 6, 1936, and that he overexerted himself on that day.

Dr. J. M. Snyder testified that he first examined claimant on November 20, 1936. The doctor stated that his examination disclosed that claimant's heart was fibrillating, and he felt that the heart was somewhat enlarged. In reply to a hypothetical question he stated

that in his opinion claimant's condition was not caused by the slipping or twisting of the rail as previously described, but that claimant's heart condition was due to infection from rheumatic fever, pneumonia, typhoid fever, and a diabetic condition. He admitted that it was possible for a sudden twist, strain, or shock to aggravate such a heart condition so as to cause permanent disability, but said that on the other hand the condition from which claimant suffered might have come upon him while lying in bed.

Dr. W. L. Mullins examined claimant on October 19, 1937. His diagnosis was "rheumatic heart disease with enlargement of the heart and mitral stenosis. The heart rhythm was totally irregular as a result of auricular fibrillation." In his opinion the auricular fibrillation was caused by rheumatic heart disease, and the lifting of the rails had nothing to do with it. His view was that claimant's heart had been damaged ever since he had rheumatic fever because mitral stenosis (narrowing of the valve of the heart) occurs only in early life, and does not develop after one reaches adult age, but as long as the heart rhythm remained regular claimant was unaware of this damage, and that the beginning of irregularity and rapidity of the heart action occurred coincidentally while claimant was working in the railroad car.

Dr. W. W. G. Maclachlan was called by the referee as an impartial expert. His diagnosis was that claimant "has mitral stenosis, which we invariably [interpret] as the end result in the heart of acute rheumatic fever. He is now fibrillating, which is the common end result of cases that have mitral stenosis but is now in fair compensation." He also testified: "I think it is an extremely difficult thing to say in his case with absolute certainty whether the acute attack that he had was not co-incidental with the doing of that work that he was doing at that time. I believe that Mr. Query's heart

was coming to such a stage that probably any extra exertion might well have thrown a little extra strain on his heart and happened at the same time as the fibrillation developed."

Apparently the referee accepted the testimony of appellant's physicians relative to the condition of claimant's heart prior to October 6, 1936. He found that the "accident aggravated, accelerated, or lit up a pre-existing condition of the claimant's heart; that this pre-existing condition was not noted or observed by any physician who examined him prior to October 6, 1936." Drs. Parke and Noah based their opinions on the fact that there was nothing wrong with claimant's heart prior to October 6th. On the other hand, Drs. Snyder and Mullins, as well as Dr. Maclachlan, were all of the opinion that claimant's heart was damaged before that date. Dr. Parke also found mitral stenosis, but did not account for it. Appellant's physicians and Dr. Maclachlan accounted for it by ascribing it to the attacks of rheumatic fever admitted by claimant. The board, in affirming the award of the referee, said that the instant case was one of an accident occurring in the course of the normal duties of an employee without overexertion when a strain caused by lifting aggravates a pre-existing heart condition.

In its opinion the court below adopted another premise, stating that: "It was a reasonable inference to draw from the testimony that the action of Costella in loosing his grip from the rail and causing it to twist placed an unusual and additional strain upon the claimant, and was accidental in its nature." In drawing such inference the court below went beyond its province and found facts which the authorities, to whom the responsibility of finding facts has been entrusted, did not find in this case.

Neither the referee nor the board made any finding as to what constituted the accident, if any, suffered by

claimant. Both fact-finding authorities seem to recognize the existence of a pre-existing heart condition. The medical testimony which, as has been said, was apparently accepted by the fact-finding bodies indicates that the condition of claimant's heart is attributable to the natural progress of a disease from which he is suffering.

We have said that where disability has been merely hastened by the effect of even hard labor, performed in the usual way, upon an organ or organs impaired by a disease—other than an occupational one—the employer is not required to pay compensation. *Fye v. Baltimore & Ohio Railroad Co.,* 133 Pa. Superior Ct. 550, 3 A. 2d 275.

In *Sadusky v. Susquehanna Collieries Co.,* 139 Pa. Superior Ct. 595, at page 598, 12 A. 2d 828, at page 830, we also said that: "The doing of one arduous task after another with undue haste may result in overexertion from the unusual manner of performing the work, but without evidence of an unusual strain sudden death raises no presumption of an accident." On the other hand, if an employee, in the course of his employment, sustains a sprain or strain, causing an injury to the physical structure of the body, even though incurred when performing labor in the usual manner and without overexertion, it is an accident and is compensable. *Rice v. Stevens Coal Co.,* 120 Pa. Superior Ct. 15, 16, 17, 181 A. 516.

We think the present case is one which requires further consideration by the compensation authorities, and the taking of additional testimony if offered by either of the parties. At least more detailed findings of fact must be made. If an accidental injury is found to have been sustained by claimant, what constituted the accident should be stated in order that we may determine whether such finding is supported by substantial and competent evidence.

The burden of proof of an accident was on claimant,

An act of hard labor, when labor of the same kind and intensity as has been regularly and usually performed by an employee, is not of itself an accident, and the performance of hard labor of the same kind and in the same manner as an employee has been doing is not of itself overexertion. *McFadden v. Lehigh Navigation Coal Co.*, 111 Pa. Superior Ct. 501, 170 A. 314. If claimant's disability did not occur while he was performing any unusual work, or while doing his usual work in an unusual manner, he is not entitled to compensation; the performance of his regular and usual labor with exertion incident thereto would not constitute an unexpected or fortuitous, untoward or unusual event. *Fetrow v. Oliver Farm Equipment Sales Co. et al.*, 132 Pa. Superior Ct. 39, 1 A. 2d 249. An accident cannot be inferred merely from an injury or from proof of disability overtaking an employee at his accustomed work; the disability may have resulted from a natural cause. *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377.

In the absence of complete findings of fact, and on account of the state of the record to which we have incidentally referred, the remission of the record for further hearing and determination is advisable.

Judgment of the court below is reversed, and the record is remitted to the court below that it may be returned to the compensation authorities for further hearing and determination.