Swalm, Appellant, *v.* J. H. Brokhoff, Inc.

Argued March 6, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes and Hirt, JJ.

*Roger J. Dever,* for appellant.

*E. MacTroutman,* with him *Penrose Hertzler,* for appellee.

OPINION BY CUNNINGHAM, J., June 30, 1941:

The appeal in this workmen's compensation case is by Anna Swalm, widow of Norman E. Swalm, from the judgment of the court below in favor of her deceased husband's employer. Her claim, in her own behalf and for the benefit of a dependent son, was disallowed by the referee; the board reversed the referee and awarded compensation; the common pleas sustained the exceptions of the employer and set aside the award.

On July 16, 1937, while delivering milk for the defendant-employer, the decedent, twenty-nine years of age, suffered an accident and resulting injury thus described in an open agreement for compensation: "Lost his balance stepping from porch to sidewalk and fell on two bottles of milk, causing laceration of left hand, ring finger and slight laceration of left thumb." Under the agreement decedent received compensation at the rate of $15 per week for 5 4/7 weeks, when he returned to work and signed a final receipt. Thereafter he worked continuously until the day before his death, which occurred quite suddenly on January 12, 1938, from a coronary thrombosis.

On February 1, 1938, claimant filed her petition for compensation under the provisions of Section 307 of the Act of June 2, 1915, P. L. 736, as amended by the Act of April 26, 1929, P. L. 829, 77 PS §542, averring therein that her husband's death was caused by the accidental injuries described in the agreement. Defendant answered, inter alia, that his death was not due to those injuries.

At the first hearing before the referee claimant testified herself and called two physicians; defendant introduced the testimony of three physicians. A second hearing was held for the purpose of taking the testimony of an impartial medical expert appointed by the referee.

Upon a finding of fact that there was "no causal relationship between the injury suffered by the decedent on July 16, 1937, and his death" the referee disallowed

the claim. The board, upon claimant's appeal, set aside the disallowance, substituted its own finding to the effect that there was a causal relationship and made an award under the provisions of the statute. As stated, that award was set aside by the court below and this appeal followed.

The single question of law here involved is whether this record contains competent and substantial medical testimony (*Flood v. Logan Iron & Steel Co.*, 145 Pa. Superior Ct. 206, 20 A. 2d 792) supporting the finding of the board. The qualifications of each medical witness to express an expert opinion were conceded, and the circumstances surrounding the death of claimant's husband were not controverted. Claimant testified that immediately prior thereto he was standing at the basin in the bathroom of their home "and as soon as [she] walked in he turned and [she] grabbed hold of him and he turned and he never spoke, he was gone already." She further stated that not only was her husband "well until a few minutes before he died," but he had "never been sick as long as [she had known] him," although as a result of the injury suffered in 1937 there was "a scar on his [left] hand . . . . . . about one and one-half inches" long, "right on the palm, little finger toward palm of the hand." .

The theory of claimant's case was that an embolus, originating in the injured hand of her husband, had passed through the venous system into the right side of his heart and thence through the lungs into the left side and through the aorta into a coronary artery where a fatal coronary thrombosis occurred. Compare *Petruzzi v. A. Levy & Co.*, 108 Pa. Superior Ct. 566, 165 A. 543, as a case in which an award was sustained upon a similar theory.

The medical testimony upon the issue of causal connection was irreconcilably conflicting. In support of her contention claimant called Doctors T. J. McGurl and R. M. Biddle. Dr. McGurl testified he had given

the decedent "temporary treatment and sent him to the hospital" on the day of the accident, and that, in his opinion, death resulted from coronary occlusion, but, as to the source of the substance which caused the artery to occlude, he merely said, "it is a possibility it came from the injured hand." His testimony was clearly insufficient to support an award: *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995; *Byars v. Howard Cleaners, Inc. et al.*, 140 Pa. Superior Ct. 188, 13 A. 2d 883; *Query v. Allegheny Pittsburgh Coal Co.*, 141 Pa. Superior Ct. 517, 15 A. 2d 564; *Coder v. Pittsburgh Des Moines Steel Co.*, 142 Pa. Superior Ct. 407, 16 A. 2d 662.

The testimony of her other expert witness, Dr. Biddle, was much stronger. He had been decedent's family physician for years and had been consulted by him several weeks prior to his death relative to an abnormal condition of his hand at the site of the accidental injury. That condition was thus described by the witness: "He had a scar on his left hand diagonally, right to left, between the base of the left ring finger toward the thumb about one inch to one and one-half inches long. This scar was tender, would become swollen, and he complained of pain around the scar, ...... He was unable to flex his left ring finger."

On direct examination Dr. Biddle testified as follows upon the controlling issue: "Q. This man died January 12, 1938, and you heard the widow testify how he died and the cause of death as given, coronary thrombosis; do you agree with that cause of death? A. Thinking over this case, I saw this young man the day before he was buried at his home in Kaska and going over the case I find there was nothing he complained of, he complained of nothing excepting this left hand, no shortness of breath that I found out from any of his relatives, so that the only conclusion I could come to it must have been an embolism. ...... Q. If he had an embolism and that was the cause of death, whether or not in your

opinion the embolism came from that injured hand? A. I couldn't say that it would originate from anywhere else. . . . . . Q. Is it your opinion it came from there? A. *That is my opinion."* (Italics supplied.)

The effect of Dr. Biddle's cross-examination was a clarification and strengthening of the previous expression of his professional opinion, as is apparent from the following excerpts: "Q. Doctor, was it your opinion that you thought he died of this coronary thrombosis merely because you couldn't find any other reason to account for his death? A. That is the only logical conclusion I could come to. Q. Under the circumstances then it would be just equivalent to hazarding a guess as to what he died from? A. No, it is not a *guess;* it is a *conclusion.* Q. What fact did you take into consideration in arriving at that conclusion? A. That he complained of nothing excepting this wound and, therefore, the wound was sufficient enough to cause the formation of a thrombus and this thrombus could get loose in time. . . . . . Q. How would it be possible for an embolus to get into the coronary artery; on what theory of medicine that you know of would it be possible to get in there? A. Well it would get loose into the vein, and go down through the auricle, through the ventricles to the aorta, then to the coronary artery to the surface of the heart. Q. You think that is possible? A. Oh, yes, indeed." (Italics supplied.)

We think Dr. Biddle's testimony measures up to the requirements of the above cited cases as a positive statement that "in his professional opinion the result in question came from the cause alleged."

Testifying in behalf of the defendant, Dr. C. W. Banks said it was possible but not probable that an embolus could be formed in the wound in decedent's hand and be carried into a coronary artery.

Doctors J. B. Heller and W. V. Dzurek, called by defendant, and Dr. V. H. Moon, the impartial expert, were of opinion, for the various reasons assigned by them,

that it would be impossible for an embolus to be formed in the veins in the palm of decedent's hand and pass through his lungs into a coronary artery.

Under all our authorities the credibility of medical witnesses and the weight to be attached to the testimony of each were matters exclusively for the board, and where any conflicts appeared in their theories or opinions, it was for the board to decide which conclusion it would adopt: *Coder v. Pittsburgh Des Moines Steel Co.*, supra.

The board, the final fact finding tribunal, saw fit to adopt the theory and conclusions of Dr. Biddle and, as we consider his testimony sufficient in quality to sustain the award, that is the end of the matter. Accordingly, the assignments of error are severally sustained.

Judgment reversed and record remitted to the end that judgment may be entered in favor of the claimant upon the award.