## Howell, Appellant, v. St. Clair Coal Company.

Argued December 10, 1928.

*Roger J. Dever,* for appellant.—There was competent evidence to sustain the finding that the death was due to accidental injury: Johnson v. Payne Yost Construction Co., 292 Pa. 509; Watkins v. Pittsburgh Coal Co., 278 Pa. 463.

*Roscoe R. Koch,* for appellee.—The testimony offered did not meet the required standard of proof: Gausman v. Pearson, 284 Pa. 348; Vorbnoff v. Mesta Machine Co., 286 Pa. 199.

OPINION BY GAWTHROP, J., January 25, 1929:

The plaintiff, a widow, filed a petition for compensation for the accidental death of her husband, a coal miner, alleging that the accident was caused by "over exertion caused by drilling, resulting in cerebral apoplexy" while he was in the course of his employment. She obtained an award by the referee which was approved by the compensation board. On appeal by the defendant to the common pleas that court held that in the state of the record before it the evidence was insufficient to support the findings of fact on which the referee and the board rested the legal conclusion that the death resulted from an accidental in-

jury, and remanded the record to the compensation board for more specific findings of fact. The compensation board returned the record to the referee for the taking of additional testimony. After that was done and the record was returned to the board, that tribunal found one additional fact and then approved the findings of fact, conclusions of law and award of the referee. When the case reached the common pleas again it entered an order setting aside the award and dismissing the petition on the ground that the findings of fact by the board, on which the award was based, were not supported by sufficient competent evidence. The claimant has appealed and the sole question presented to us is whether there is any competent evidence in the record to sustain the award.

The following facts were not only proved but are undisputed: The decedent, a man forty-nine years old, and apparently in good health, but in fact afflicted with arterio-sclerosis, while engaged in drilling a hole in a chute, as an employee in the defendant's mine, on March 12, 1926, fell unconscious, and so remained until his death about three and a half hours later from apoplexy. The chute in which he worked opened from a gangway, and had been driven about thirty feet from the opening. The mine is ventilated by means of a suction fan, but this did not produce any circulation in the chute in which the deceased was working, so that it was ventilated by releasing compressed air into it. At the time he fell unconscious he was standing on a pitch of twenty-five to thirty degrees, at a point twenty to twenty-five feet from the opening of the chute, engaged in drilling a hole with a drill seven feet long, weighing eleven and a half pounds operated by hand. The compressed air for ventilation was delivered into the chute by a pipe and released at a pressure of about sixty pounds to the square inch, about ten feet from the chute's

opening, and from ten to twelve feet from the point where the deceased was operating the drill. The natural pressure of the atmosphere is fourteen or fifteen pounds to the square inch.

Dr. Weaver, a physician called by the claimant, after having heard all the testimony establishing the above stated facts, was asked this question: Whether or not in your opinion the working conditions of that place as testified by the foreman and the fellow workmen, working in that compressed air, plus the effort to drill with this auger offered in evidence, caused this stroke of apoplexy? He answered: "Yes, sir." A second medical witness called by the claimant at the second hearing testified that the method of ventilating the chute created a "fluctuating atmosphere," which "it is quite possible" would be a superinducing cause of the death. The board very properly rejected his testimony on the ground that the expression of the opinion of the professional witness did not meet the standard of proof required by the Supreme Court and this court.

As stated by the court below, the theory upon which this claim was presented is that the release of the compressed air in the chute or chamber in which the deceased was working produced an atmospheric condition which so raised his blood pressure that the increased pressure upon his arteries, in their impaired condition, combined with the ordinary exertion required to perform the work in which he was engaged, was either the sole or the superinducing cause of the rupture of a blood vessel in the head, resulting in apoplexy and death. The burden of proof, therefore, was upon the claimant to establish by competent testimony that the unusual manner of ventilating the chute in which her husband was working when he was stricken, or the dangerous atmospheric condition therein, or both combined, caused a rupture of a blood vessel in his head, which admittedly was the cause

of death. If there was sufficient competent evidence that that was the cause of the rupture of the blood vessel, then the resultant death was accidental within the meaning of the Compensation Act; otherwise, it was not.

The basic findings of fact upon which the award was founded were: The undue air pressure, together with the exertion in drilling, raised the decedent's blood pressure to a point where a sclerosed artery in the brain of the decedent burst. The ventilation of the chute in which claimant's decedent worked when he was stricken with apoplexy was the super-inducing cause of the rupture of a blood vessel in his head. As pointed out by the court below, there was not a scintilla of evidence taken at either hearing showing to what extent, if any, the method of ventilating the chute affected the pressure of the air therein. There was no testimony to prove that the manner in which the chute was ventilated had previously produced any ill effects upon anyone working in it, or that the method of ventilation was dangerous or one not commonly used in the driving of chutes in a coal mine. Proof of the causal connection between the atmospheric condition of the chutes and the death depends wholly upon the opinion expressed by Dr. Weaver, who based his opinion, in part at least, upon the fact that the mere introduction of compressed air into the chute so increased the air pressure therein as to raise the blood pressure of the workmen. The manifest purpose of introducing compressed air into the chute was to keep it supplied with fresh air by causing a free circulation of the air. With an opening such as here existed from the chute into a gangway of unknown dimensions, it would seem at least doubtful whether the air pressure in the chute could be increased to such a degree as to affect a workman injuriously. But assuming that it could, there was no proof, or effort to prove, to what extent, if any,

the air pressure was increased. Doubtless the proof of the fact would require the testimony of an expert in hydrostatics. None was called. While a medical witness may be competent to express an opinion as to the effect of an increase of air pressure upon a person working therein, it seem's clear that Dr. Weaver's opinion that the working conditions in the chute caused the stroke of apoplexy was grounded upon the fact not established or admitted, that the air pressure in the chute was increased by the introduction of the compressed air, to a degree which rendered it injurious to the workmen. Therefore, the opinion was not competent evidence. As there was no other competent proof to sustain a finding that the death resulted from an accidental injury, the court below committed no error in setting aside the award and dismissing the petition. As the able counsel for the appellant had two opportunities to produce evidence to establish the fact that the conditions under which the employee worked were a superinducing cause of the ruptured blood vessel, there would seem to be no reason for granting another opportunity to do so.

The judgment is affirmed.