## De Rosa, Appellant, *v.* Westmoreland Coal Company.

538

Argued April 22, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*A. C. Scales,* of *Scales, Loughran & Shaw,* for appellant.

*James Gregg,* of *Portser, Gregg & McConnell,* for appellee.

OPINION BY HIRT, J., October 2, 1940:

Claimant's husband died on February 12, 1934 in defendant's No. 1 mine at Export. He was then 67 years of age. After reporting at 7 A. M., in apparent good health, he worked with his "buddy" for about an hour clearing up and loading a car with slate making ready for the cutting machine. While waiting for the machine he ate a lunch about 9 o'clock when he was seized with a violent pain in his chest; his legs were shaking, he could not stand on his feet and he was gasping for breath.

He died about an hour later while being taken out of the mine.

It is claimant's contention that death resulted from noxious gases in the mine. The referee, at the close of the testimony on the first submission, found that claimant's husband "Did not become ill as a result of external violence to the physical structure of the body and that his death was due to some unknown causes in no way associated with injury by accident" and refused an award. After an appeal, the board remanded the case to the referee for further hearing and determination. Additional testimony was then taken which amplified the testimony previously given, but we agree with the board that no new facts were developed. Nevertheless the referee then found from the evidence "that the resultant effect of *some element* emanating from the workings of the defendant's mine, caused such violence to the physical structure of decedent's body as to cause his death." (Italics supplied). Upon this finding the referee made an award, which was affirmed by the board. On appeal, the lower court reversed and entered judgment for the defendant. The question involved, therefore, is whether there is evidence sufficient to sustain that basic finding of fact.

There is no direct evidence of the presence of gas in the mine, but on the contrary there is positive testimony that there was not. A certified mine foreman and fire boss inspected the mine, including the room in number 18 butt where decedent had been working, about 3 o'clock and again at 9 o'clock in the morning just before De Rosa's death. The second examination was made at the time decedent was stricken and in the very room in which he was working; the inspection disclosed no evidence of gas. This official also found that the forced ventilation system was operating efficiently and was delivering twice the amount of fresh air required by law. He made an official record of these inspections. An-

other certified foreman and fire boss, within an hour after decedent's death, made a similar inspection for carbon monoxide, carbon dioxide and methane gases and found none. He measured the efficiency of the ventilating system and found it to be delivering 15 M cubic feet of air per minute. A third assistant foreman also made an inspection at the place where he found decedent ill in the mine. The ventilating system was then operating properly and he found no evidence of gas. A mine foreman is a representative of the State and his testimony under oath is entitled to credence unless rebutted. *Rafferty v. National Mining Co.*, 234 Pa. 66, 82 A. 1089.

There are no circumstances which indicate the presence of gas in the mine. An adjoining mine, "No. 2," was classified as gaseous because gas in some quantity had been detected in that mine within the previous year. But the only passageway to this mine was 500 feet from where decedent was working and the mines were separated by a door which was kept closed. Each mine was operated as a unit with separate ventilating systems both of which were in operation. The gas found in No. 2 mine was methane, a component of the "fire damp" of coal mines, potentially a formidable danger because of its highly explosive character, but, according to the testimony, not otherwise dangerous except when highly concentrated. As a safety measure, electric lamps were used by the workmen in that mine. About a month before decedent's death there had been a pressure break in the roof of mine No. 1 and a subsidence of overlying strata. The presence of a small amount of methane gas was discovered and this mine was then closed but was reopened after the gas was removed and had been in operation for three weeks before February 12, 1934, and during this period frequent inspections failed to disclose the presence of gas of any kind. As a precaution, however, electric lamps were substituted for open flame lamps in mine No. 1 and they

were in use for the first time on the day of decedent's death. The change to electric lamps is a circumstance of no significance.

It is contended that it was carbon monoxide or carbon dioxide and not methane gas which caused De Rosa's death, and in support of that contention, claimant places some emphasis on the testimony of the witness Ventura who worked near decedent in an adjoining room. But his statement that he felt weak that day is no evidence of the presence of poisonous gas, for he said he felt no different that day than he had every day since 1930, though his health improved when he left defendant's employ. Forty-eight men were working in that section of the mine, sixteen of them in 18 butt, including decedent's "buddy" who worked with him in the same room, and none of them suffered discomfort nor displayed any symptoms indicating the presence of noxious gases. Circumstantial evidence to support the finding of an accident must clearly and logically indicate it. *Adamchick v. Wyoming Val. Col. Co.*, 332 Pa. 401, 3 A. 2d 377.

It is clear that support for the finding of accidental death from "some element" in defendant's mine must be found, if at all, in the medical testimony and three physicians expressed opinions as to the cause of death. The diagnosis of the company's doctor, whose examination of the body at the mouth of the mine was more than perfunctory, was angina pectoris. There was some testimony of the witness Ventura at the second hearing that De Rosa's face when he was stricken turned "a little red," a distinguishing indication of carbon monoxide poisoning. But this statement was in direct contradiction of his former testimony of the pallor of deceased and is of no probative value. A chemical examination of the blood would have determined the presence of carbon monoxide and a general post-mortem examination would have established the cause of death. No

autopsy was held. Both Dr. T. W. Moran and Dr. L. W. McGough, neither of whom had known De Rosa nor had examined the body, expressed the professional opinion that death resulted from some kind of poisonous gas. Carbon monoxide gas operates as a poison; death from carbon dioxide gas results from suffocation. Neither witness indicated the kind of gas which in his opinion, caused death. In formal essentials the opinions expressed by these witnesses complied with the standard applicable to medical experts. *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995. But from an examination of their testimony it is at once apparent that their conclusions were founded upon an unproven premise. It must be conceded from the history of the case that death, with equal probability, may have resulted from a noxious gas or from a heart ailment or from other natural causes. Dr. Moran's testimony is of no value for his opinion was predicated on the assumption that poisonous gases were present in the mine and he frankly stated that without that assumption he could not say that death resulted from that cause. Dr. McGough (who in his past experience had observed only two cases of death from gas poisoning) testified not in response to a proper hypothetical question, but from a reading of all of the testimony and from hearing some of the witnesses testify. It is only where all of the material facts are admitted or proved by evidence which is not conflicting that an expert may base an opinion upon the whole evidence in the case. *Gillman v. Media Elc., E. Ry. Co.*, 224 Pa. 267, 73 A. 342; *Howell v. St. Clair Coal Co.*, 95 Pa. Superior Ct. 310. All of the competent evidence in this case was that there was no gas in the mine and the only serious conflict in the testimony was raised by the admission by the referee, over objection, of statements of deceased as to the presence of gas, made on remote prior occasions. This hearsay testimony was considered by Dr. McGough in forming

his opinion. It is apparent that the process by which he reached a conclusion was this; he assumed the function of finding facts outside of his proper sphere as a medical witness and from considering and weighing all of the testimony found that gas of some kind was present in the mine and from that finding, concluded that death resulted from that cause. "Where there is a serious question whether the disability is the result of an accident, unequivocal medical testimony is necessary": *Mohr v. Desimone & Sayers*, 110 Pa. Superior Ct. 44, 167 A. 504. Since there is no substantial competent evidence in the record of the presence of gas in the mine the testimony of Dr. McGough is insufficient to establish death from accident, and the lower court very properly set aside the award.

Judgment affirmed.