Connor et al. *v.* Phila. R. T. Co., Appellant.

Argued October 10, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAW-
THROP, CUNNINGHAM and BALDRIGE, JJ.

*Warwick Potter Scott,* and with him *J. J. K. Caskie,* for appellant.—The use of the word "probably" by a physician as a basis for his testimony purporting to connect a physical manifestation in a patient with an accident is insufficient to render the physician's testimony upon that point admissible: McCrosson v. Philadelphia Rapid Transit Co., 283 Pa. 492; Anderson v. Baxter, 285 Pa. 443.

*Russell Conwell Cooney,* and with him *James A. Lynd,* for appellee.—A trolley company does not have an exclusive right to the use of the highway, on which their tracks are laid: Fenner v. Traction Company, 202 Pa. 365; Holt v. Pennsylvania Railroad Company, 206 Pa. 365; Natvig v. Philadelphia Rapid Transit Co., 293 Pa. 355.

OPINION BY BALDRIGE, J., January 29, 1930:

On the 28th day of November, 1926, between 11:00 and 11:30 P. M., Charles Connor, accompanied by his wife, drove the latter's automobile to a garage located in the middle of the block and known as No. 2031 North Twenty-ninth Street, Philadelphia. Alex Parnell, employe of the garage, took Charles Connor's place at the wheel to drive the Connors home and bring the car back to the garage. The garage was on the east side

of the street and the driver of the car wanted to cross Twenty-ninth Street, on which are laid double trolley tracks, for the purpose of going south. Parnell testified that he looked and saw no traffic going north, then he steered the car to the right around a car in front of him, pulling up about three feet; then he stopped and looked again. At that point he saw a trolley car standing on the south side of Ridge Avenue discharging passengers, then he drove on the north bound trolley track and stopped. The trolley at Ridge Avenue had not yet started. Parnell stated that he was required to remain there three or four minutes on account of heavy south bound traffic in order to get clearance enough to proceed southward toward Diamond Street. In the meantime, the trolley car started across Ridge Avenue and ran at full speed into the automobile, and, as a result, the automobile was damaged and the occupants of the car were injured.

Charles Connor, Elizabeth Connor, and Alex Parnell brought actions against the appellant and three verdicts were rendered. The jury found for Parnell in the sum of $400; for Elizabeth Connor in the sum of $900; and for Charles Connor in the sum of $800. As the cases arose out of one transaction, they were tried together. Three appeals followed from the judgments entered and they were argued together, and will be disposed of in one opinion.

The appellant contends that the plaintiffs were guilty of contributory negligence in driving their car diagonally on the street against north bound traffic. That act in itself could not be held, as a matter of law, to be negligence. Assuming the truthfulness of the plaintiffs' testimony, as we are required to do, there was no north bound traffic when the plaintiffs started to drive across the street; they were not impeded on that account. The interference did not arise until the plaintiffs attempted to enter the stream of south bound

traffic. It was the condition on that side of the street that necessitated their stopping on the track. This case, under those facts, does not come within the principle laid down in Benamy v. Reading Transit & Light Co., 269 Pa. 372, which holds that a driver of a car is guilty of contributory negligence when he drives without looking on to a trolley track before an approaching car; or within the ruling of Wagner v. Lehigh Traction Co., 212 Pa. 132, where a trolley company is held not to be liable when a motorman exercising due care is unable to see an obstruction on the track until it is too late to avoid an accident. These and the other cases cited by appellant are not in point under the plaintiffs' testimony.

It was a question of fact for the jury to say whether attempting to cross the street, under the traffic conditions and with the standing trolley car one-half block away, was such a perilous undertaking as to convict the plaintiffs of contributory negligence.

Nor can it be said, as a matter of law, that the plaintiffs' conduct in driving on the track, or their failure to move when there, was negligence. It was the duty of these plaintiffs not to obstruct traffic but to give right-of-way to an approaching trolley car, if it were safe and feasible to move, but if not, their remaining on the track where they were in full view of the operator of an approaching trolley did not make them guilty of contributory negligence: Messinger v. Philadelphia Rapid Transit Co. (to be reported). This assignment is without merit.

The appellant assigned for error the admission of testimony of a physician respecting the condition of the ear of Elizabeth Connor, as the witness did not state that in his professional opinion such condition resulted from the accident.

Elizabeth Connor testified that she had a mastoid operation twenty-six years ago but had not been

troubled since until the accident; that after the collision she had headaches, was unable to sleep; that she experienced an awful pain in and had a discharge from her ear. Dr. Budin testified that he was Mrs. Connor's next door neighbor; that he had only been called "on rare occasions to render professional services as they seemed to be a pretty healthy family." He was summoned immediately after the accident and then learned of the ear injury. He treated it but his skill was in a measure unavailing and he advised consulting Dr. Dunn. This physician did not testify, but a bill for his services was introduced in evidence, without objection, which showed that he treated her from January 23, 1927, until April 28, 1928, and his bill amounted to $320.

On cross-examination, Dr. Budin testified: "Q. There were no complications of the ear condition that may have occurred? A. I assume that the lighting up of the condition (of the ear) was due rather to a reduction in her resisting power. Q. You think that is probably the reason for that? A. Yes."

We are not unmindful that our Supreme Court has said frequently in those cases where expert testimony is required to show the connection between an accident and the harmful results therefrom that it is not sufficient for doctors to testify that the ailment in question might have resulted from the assigned cause. The witness must state that in "his professional opinion the result in question did come from the cause alleged," or words equally as explicit: Fink v. Sheldon Axle & Spring Co., 270 Pa. 476 (479); McCrosson v. Philadelphia Rapid Transit Co., 283 Pa. 492; Anderson v. Baxter, 285 Pa. 443.

In those and kindred cases, expert testimony was required to show the connection between the alleged cause and the result thereof. For instance, in the Fink case, compensation was claimed for paralysis as

the result of an injury; in the McCrosson case, seven weeks after the accident the plaintiff became ill with pneumonia; in the Anderson case, the plaintiff cut his hand on a rain spout and two months later was stricken with pneumonia. There was such a remoteness in those cases that from a common observation there was no connection between them.

Here there was a direct connection between the accident and the injury which was immediate and apparent. As Mr. Justice WALLING says in Anderson v. Baxter, 285 Pa. 443, "The plaintiff's claim was strengthened by natural sequence of events." Judge KELLER in Davis v. Davis, 80 Pa. Superior Ct. 343, very clearly distinguishes between the cases where medical testimony was necessary to prove the connection between the accident and disability, or death, and those cases, such as this one, where connection between the accident and the injury may be reasonably inferred without medical testimony.

In Sullivan v. Baltimore & Ohio R. R., 272 Pa. 429 (435), the Supreme Court held that the testimony of the doctor alone would have been insufficient but there were other facts presented, which, if accepted as true by the jury, would have justified the inference that the cause of the injuries was as claimed by the plaintiff.

In Jones v. Phila. & Reading C. & I. Co., 285 Pa. 317, the court held as competent the testimony of the medical expert who stated, "I think the wetting was the cause of his trouble which eventually terminated in pneumonia and his death." See also Johnston v. Payne-Yost Construction Co., 292 Pa. 509 (515).

The testimony of Dr. Budin was not as definite as may be desirable but the expression of such a positive opinion, as to be without any doubt, is not required. If the testimony is sufficiently strong to satisfy the mind of a reasonable person that the injury was the

result of the accident, or materially contributed to it, that is sufficient: Farran v. Curtis Publishing Co., 276 Pa. 553; Vorbnoff v. Mesta Machine Co., 286 Pa. 199 (205).

After giving careful consideration to the argument of the appellant, we have reached the conclusion that Dr. Budin's testimony was admissible and it, together with the other testimony, was sufficient upon which to base the verdicts in these cases.

Assignments of error are overruled. Judgment of the learned court below is affirmed.