Mohr *v.* Desimone and Sayers, Appellants.

Argued May 1, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*H. E. McCamey* of *Dickie, Robinson and McCamey,* and with him *William W. Matson,* for appellant, cited:

Krock v. Ballard Sprague & Co., 104 Pa. Superior Ct. 389; Keifer v. Phila. & Reading Coal & Iron Co., 102 Pa. Superior Ct. 235.

*Wayne Theophilus*, for appellee.

OPINION BY BALDRIGE, J., July 14, 1933:

The claimant, Otto Mohr, about three o'clock in the afternoon of May 2, 1930, while in the course of his usual employment, slipped and fell into a ditch, variously estimated as 15 to 25 feet deep. As a result he experienced "pain in back, knee and everything." He remained on the job until quitting time but did no further work. The next day he was taken to the Allegheny General Hospital. His back was not examined, but the physician found contusions of both knees and chronic arthritis. He was advised to apply alcohol and report back to the hospital. He visited that institution at various times until June 9, 1930. An agreement was entered into, providing for compensation at the rate of $15 per week from May 8, 1930, to and including May 21, 1930. On July 1, 1930, a final receipt was signed. The claimant, within one year on April 27, 1931, filed a petition, alleging that his disability had recurred and asked for renstatement of the compensation agreement. An answer was filed, denying that the claimant was disabled on account of the accident of May 2, 1930. The referee found that the claimant was totally disabled as a result of the accident, and this finding was affirmed by the compensation board, and its decision sustained by the court of common pleas.

The controversy is whether the testimony was sufficient to prove a causal relation between the alleged disability and the accident. The evidence shows that prior to the accident the claimant worked for the defendants regularly for nine months as a laborer and a

blacksmith, shoeing horses and mules, until he was injured, and that he was in good physical condition, although his left leg was somewhat impaired. Karl Janssen, who had known him since 1920, testified that the condition of his leg did not interfere materially with his work or walking. N. L. Sayers, one of the appellants, said that the claimant had "some defect with his legs; he couldn't move around as fast as the rest could, but otherwise he was a very good employee." It was shown that since the accident, the claimant has been unable to do any manual labor. His foot markedly drags and he is required to use a cane. He endeavored to do some odd jobs, such as washing dishes and other light work, for which he received his meals only as compensation.

Dr. William H. Mayer, called upon the part of the claimant, examined him the day before the hearing which was held on June 23, 1931. He found, "In the left leg there is disturbance of ability even to appreciate heat, cold and pain. In the right leg there is loss of touch sensation. This condition extends upward, well up into the middle of the back; he complains also of pain in the back. There is muscular weakness in the supporting muscles of the spine. There is a definite—what we speak of as partial and spastic paralysis, of the right leg. The diagnosis in the case is one which we make, which we call hematomyelia. This condition is due to a hemorrhage in the center of the spinal cord. In this case it probably lies more to the right. Seen frequently in severe shocks or contusions or bruises of the spinal cord ...... I think that there is hardly any question that this is due to some injury or other, and injury of that type is the logical cause, from the history."

The appellants' theory is that the claimant's disability was due to a condition that had existed for some time, and that Dr. Mayer's opinion was based

on an insufficient history of the claimant. The doctor, when asked if "this thing could have happened previous," answered: "Well, I don't believe this man with this amount of disability, that what he has, he could have done the heavy work he did. If he carried off the heavy work of a laborer, he didn't do it with the condition from which he is now suffering, and he never will; that is the unfortunate part of it. I know this is one case in which I do honestly feel is a justifiable claim. This thing is definitely clear; in other words, a clear case of hematomyelia."

Dr. Carpenter, called in behalf of the defendants, examined the claimant on May 12, 1931. He was asked: "Q. In your professional opinion, do you see any connection between the accident and the condition you found, involving these legs? A. No, the original injury to the knees and now suffering from a partial paralysis of the right leg, with some involvement of the right arm, the trouble would have to be in the central nervous system higher up. The knees couldn't affect the right arm."

Dr. Heberling, called by the defendants, testified that he examined the patient on the 2d of May, the day of the accident, and last saw him about a year prior to the hearing, when the disability in his knees had cleared up. When asked to express his opinion as to whether he had a hematomyelia, he stated it was impossible for him to answer that question, and added: "I don't see how you could get a hemorrhage of the spinal cord from the injury;" but he conceded that he is not a specialist, as Dr. Mayer is, on neurological conditions. He stated further that the Allegheny Hospital records show that the claimant had been treated there "as a chronic case" since 1923, where he was a patient with a head injury, complained of dizziness, and had a lot of teeth extracted. This record shows further, in 1928, that "patient's left leg was somewhat para-

lyzed in 1920 ...... Came in because he couldn't sleep, loss of appetite and lost fifteen pounds; since then in wet weather it has been difficult to move the leg."

We are in accord with the lower court's view that the appellants' testimony is "vague and uncertain as to the extent of the former disability and no connection at all between such alleged injuries and his present condition." We do not hold that this medical testimony is insufficient, but, if we assume that it is, and entirely disregard it, there remains sufficient lay testimony to support an award. Compensation authorities are not required, in all cases, to depend solely on expert medical testimony. Where there is a serious question whether the disability is the result of an accident, unequivocal medical testimony is necessary. But, in the case at bar, the claimant had been steadily employed in heavy, manual work until the accident, which unquestionably occurred and resulted in injuries. It is logical to assume, under the facts presented, that his condition is attributable to the injuries. It has frequently been held that where the disability complained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the entire absence of expert opinion: Utzman v. Penna. Rubber Co. et al., 96 Pa. Superior Ct. 463; Connor v. P. R. T. Co., 98 Pa. Superior Ct. 250; Paul et al. v. Atlantic Ref. Co., 304 Pa. 360, 156 A. 94.

The causal relation between the accident and the immediate disability was established by sufficient competent evidence. The findings of fact are, therefore, conclusive.

Assignments of error are overruled. Judgment of the lower court affirmed.