Rossiter, Appellant, *v.* Becker, Smith & Page et al.

Argued October 19, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and JAMES, JJ.

*Thomas M. J. Regan,* for appellant.

*Louis Wagner,* and with him *Richard A. Smith* and *Thomas J. Clary,* for appellee. .

Opinion by Trexler, P. J., February 1, 1934:

This is a 'Workmen's Compensation case. The claimant, an apprentice, was putting some tools in a tool box and while thus engaged the lid of the box fell and "bumped" his thigh and pinched it, leaving visible marks on the surface. The boy who was a very frank witness described his sensations, that he suffered pain occasionally, continued to work, and the injury troubled him. He did not attribute it at first to the falling of the lid, he thought he had rheumatism. The skin was not broken. The pain and discomfort, however, grew and became aggravated, he ceased working fourteen days after the accident and finally resort was had to an operation which disclosed an infection of the bone, osteomyelitis, and required a boring into the bone and the removal of the infected area. He spent several months in the hospital and has not been able to work since.

With these facts present, a doctor testified that in his opinion, the diseased condition of the bone resulted from the blow. On cross-examination, upon an assumption suggested by counsel, he was led to say that the falling of the lid, not being a direct blow and the result being merely a pinch of the tissues, the bone was not bruised and in his opinion he could not say that the injury to the bone was the result of the blow caused by the falling of the lid. The apparent contradiction arises from the assumed fact that the force of the blow did not reach the bone. It was not within the province of the doctor to make such an assumption.

The referee, in the first instance was the proper person to conclude whether a blow such as was described had sufficient force to injure the bone and mindful no doubt of the very evident fact that the infection of

the bone which followed the injury was at the identical place where the blow was delivered and where the external marks had appeared, he could readily conclude that the relation of cause and effect existed. It is very unlikely that the infection or germ which was present in the boy's body, dormant, but liable to become active if a part of the body became weakened, should appear at the very spot where the blow from the falling lid descended and have no relation to it.

The testimony of the doctor in his examination in chief (in part) was as follows: "Q. The testimony of the boy who preceded you on the stand was that the swelling and operation occurred right where the blow had been struck. Assuming the statements of the boy, that I have just given you, to be correct, did or did not this accident aggravate a pre-existing condition in the location where the operation took place? A. It could very well do so. Q. In your professional opinion did it or did it not, in this particular case? A. Yes."

In his cross-examination, there was an effort made to change the conclusion which he reached, the question was asked, "Wouldn't the force of such a blow be downward, Doctor, rather than forward, if he was struck? A. I think I would say yes, but the rest of you in this room know as much about the lid falling as I do."

The doctor evidently realized that he was entering upon a subject which did not require expert medical information. He was asked, "If the force of the blow did not reach into the bone, assuming that to be the fact, would you still be of the opinion that the accident was an aggravating factor?" Answer, "Yes." He then was led to say in answer to the question, "But in your opinion that is what you are concerned with in this case—do you have any opinion as to whether the accident was or was not an aggravating factor? A. It is likely that it could be, that is as far as I can go.

Q. You don't care to go as far as saying 'in your opinion it was'? A. I do not, I have said that three times.'' (?)

Here he was led to say something which he apparently did not mean, for immediately following, the question was put, "Give us your opinion, assuming the absolute truthfulness of that history, what is your opinion—(interruption)—of the connection between this accident in particular and the condition in this boy as you saw it? A. I thought that there was a definite connection between the two.''

It is very evident that taking the doctor's testimony and excluding the particular part concerning which he admitted he had no expert knowledge, (the force exerted by the falling lid), it is sufficient to show a causal connection between the blow and the injury for which compensation is claimed.

We may add that without expert medical testimony as to the causal connection, the facts shown by the claimant and his witnesses and the testimony of the doctor, excluding his expert opinion, would lead one to believe that the blow at the place indicated, followed by a progressive irritation and increased swelling accompanied by a rarification of the bone, was the cause of the trouble. It was the natural and probable result of the blow. Mohr v. Desimone & Sayers, 110 Pa. Superior Ct. 44, and cases there cited, and Ross v. Riffle, 310 Pa. 176, 164 A. 913.

The judgment of the lower court is reversed and the record remitted with instructions to enter judgment on the award in favor of the plaintiff, the appellee to pay the costs.