Opinion by
 

 Parker, J.,
 

 A referee and board awarded compensation to the claimant for the loss of an eye under Section 306 (c) of the Workmen’s Compensation Act (77 PS 513) and on appeal to a court of common pleas judgment was entered for the claimant. The defendant, having appealed to this court, contends that there was not sufficient evidence to support findings that there was an accident or that there was a causal connection between the alleged accident and the loss of the eye.
 

 We will state the evidence which is relied upon to support the findings of fact which are questioned. Claimant, a man 42 years of age, had worked for the defendant many years. He testified that prior to March 27, 1934, he had no trouble with his eyes, that he had good vision in both eyes, and that he worked steadily when the defendant’s mine operated. On that date at about 10 A. M., he was helping to lay a track in a mine when he used both hands to lift a canvas at a breakthrough and, as he did so, the air blew against the canvas and caused dust or other foreign matter which had collected on the canvas to lodge in his right eye. Immediately thereafter water began to run from the right eye and claimant suffered pain in the eye. Forthwith he called the occurrence to the attention of his buddy, one Farra, with whom he was working, and had him examine the eye but with use of the miner’s lamp Farra was unable to discover any object in the eye or give the claimant any relief. Farra cautioned him not
 
 *437
 
 to rub the eye and saw that it was red and inflamed. At the end of the day’s work at about four in the afternoon, claimant reported to the mine nurse for treatment. She corroborated the claimant as to his statement as to the nature of the complaint, but testified that her examination did not disclose the presence of any foreign substance then in the eye or any abrasion or scratch on the surface of the eye. The eye, however, was badly inflamed. The treatment ivas superficial and he was given an ointment to take to his home and use on the eye. He continued to work but on reporting again to the nurse on March 31 he was sent to the company’s physician, Dr. J. C. Markel. Claimant was immediately taken to a hospital where he was treated but the eye failed to respond to such treatment and it was finally removed on April 17, 1934.
 

 To meet the inferences to be drawn from this natural sequence of events leading from the mishap to the removal of the eye, the defendant called several witnesses, particularly Dr. Markel. He testified that on the occasion of his first examination claimant was suffering from an inflammation of the iris and cornea of the eye which he described as iridoceratitis (iridocyclitis) or keratitis, followed by secondary glaucoma. He gave as his professional opinion that the conditions which necessitated the removal of the eye were due to “some systemic condition,” “either a luetic or a focal infection.” He first stressed the luetic infection as the cause of the trouble but when he was confronted with a letter which he had written in which he stated that the Wasserman test showed negative when the claimant’s blood was examined, he abandoned that contention and emphasized a focal infection. In the latter connection he stated that an examination of the teeth disclosed that they were in very bad condition and that the condition of the teeth and gums whs enough to cause the affection of the eye if there were no other causes pres
 
 *438
 
 ent. Dr. Markel further gave it as his opinion that the type of injury to this eye was not traumatic in origin. The claimant had testified that he had not been treated for any illness or disorder for many years, but the defendant produced records tending to show that he had been treated for syphilis in the early part of 1934. As opposed to this testimony the Wasserman and Kahn tests made by Dr. Markel and by claimant’s expert, to whose testimony we will refer later, showed a negative result.
 

 To answer the testimony of the defendant’s expert the claimant called in rebuttal Dr. Stahlman who specialized in eye, ear, nose and throat and who testified very clearly and positively that the type of injury described by Dr. Markel was not traceable to a luetic or focal infection but was due to an injury or an irritation set up by some foreign body that got in the eye. Dr. Stahlman, who did not examine the claimant until July, 1935, stated that in his professional opinion the condition of the claimant’s eye which necessitated the operation as described by Dr. Markel was not due to a systemic infection, either luetic or focal. We quote from his testimony: “Q. Could any focal infection of the teeth and gums produce the condition this man is supposed to have had, and require the removal of his eye in such a short time? A. It would not. Q. Now, what is the most frequent cause of keratitis? A. It is an injury or trauma or some irritating substance gotten into the eye.” He then explained in some detail his reasons for concluding that the trouble was not due to luetic or focal infection.
 

 We find no merit in the contention of the appellant that there was not sufficient evidence to support findings by referee and board that dust was blown in claimant’s eye as he alleged) and that this constituted an accident as that term is used in the compensation law. The burden of appellant’s argument is that because
 
 *439
 
 neither the claimant’s buddy nor the nurse found a foreign object in the eye and there was no apparent abrasion of the eye ball, the damage alleged could not have occurred. This overlooks the fact that the claimant may have removed the foreign object by a manipulation of the eyelids or that the tears may have carried it away. We think that any adult would have sufficient experiential capacity to know whether a foreign object had lodged in his eye. In addition, we have the immediate effect on the eye, the watering and pain. Undoubtedly the occurrence was an untoward event or accident if this testimony is believed, and it was for the compensation authorities to answer that question.
 

 We are likewise of the opinion that there was sufficient evidence to support the finding as to causal connection between the accident and the loss of the eye. Assuming that a foreign particle did lodge in claimant’s eye and that the eye was normal prior to that time, this occurrence was immediately followed by manifestations of irritation and in a few days by inflammation of the cornea and iris, in turn resulting in glaucoma which meant loss of the eye. We have a natural and progressive course of events in which each succeeding happening seems to be traceable to that which preceded. The reasonable and logical deductions from such a sequence would seem to lead to the conclusion that there was a causal connection between the loss of the eye and the accident. It will not do to say that the result attained would not have happened if there had not been present in the claimant’s body some weakness or predisposition which made it a fertile field for the development of glaucoma or that this claimant was more susceptible to the disease than the average individual. If a pre-existing ailment was accelerated in its development by the accident and resulted in the loss of the eye, the claimant is entitled to compensation:
 
 Whittle v. Nat. Aniline
 
 &
 
 C.
 
 Co., 266 Pa. 356, 109 A,
 
 *440
 
 847;
 
 Clark v. Lehigh Valley C. Co.,
 
 264 Pa. 529, 533, 107 A. 858;
 
 Kucinic v. United Eng. & Fdy. Co.,
 
 110 Pa. Superior Ct. 261, 266, 168 A. 344.
 

 Where injuries are so immediately and directly, or naturally and probably, the result of an accident we are not required to depend alone upon medical testimony to find a causal connection:
 
 Kucinic v. United Eng. & Fdy. Co.,
 
 supra (p. 266);
 
 Fillman v. Wolfe,
 
 100 Pa. Superior Ct. 306, 309;
 
 Utzman v. Penna. Rubber Co.,
 
 96 Pa. Superior Ct. 463, 465;
 
 Grobuskie v. Shipman Koal Co.,
 
 80 Pa. Superior Ct. 349;
 
 Davis v. Davis,
 
 80 Pa. Superior Ct. 343. Granting, for the sake of argument, that the medical testimony produced by defendant and the admitted history, taken with the successive events that took place before the eye was lost, indicated that it would not be reasonable to base a conclusion on the sequence of events alone, nevertheless such course of events does have considerable probative value. When the course of events is considered in connection with the medical testimony and as that testimony interpreted the events, there is no question that the testimony was sufficient to support the findings of the board. The board, as it had a right to do, accepted the opinion of the claimant’s expert in preference to that of the expert called by defendant. The testimony of Dr. Stahlman indicated that the disease of the eye found and diagnosed by Dr. Markel was not of systemic origin, but was due to an injury, as from a foreign substance getting in the eye. In other words, the conclusion of Dr. Stahlman harmonized with the deductions that a layman would draw from the rapid course of events. The conclusions of the fact finding bodies were supported by competent evidence and such being the case the judgment cannot be disturbed by us.
 

 Judgment of the court below is affirmed.