Opinion by
 

 Keller, P. J.,
 

 This is a distressing case, but it must be decided in accordance with the provisions of the Workmen’s Compensation Act. Our sympathies cannot justify an award not warranted by the law. It is complicated by the fact that the defendant changed insurance carriers, and, of course, one insurer cannot be held liable for disability resulting from .accidents that occurred before it assumed liability:
 
 Miller v. Textor Transfer Co.,
 
 106 Pa. Superior Ct. 38, 161 A. 442. The causal connection between the particular
 
 accident
 
 and the
 
 disability claimed
 
 must be established by the evidence, Ibid;
 
 Miller v. Textor Transfer Co.,
 
 112 Pa. Superior Ct. 528, 172 A. 315.
 

 The claimant appellee, Walter Dover, worked for the
 
 *476
 
 defendant, American Reduction Company, for 29 years as a rubbish collector. In connection with his work, he drove a team. The appellant, Eureka Casualty Company, became the defendant’s compensation insurance carrier on or about June 16, 1938. Immediately prior to that time the State Workmen’s Insurance Fund was the insurance carrier, but the record does not show for how long.
 

 The evidence in this case shows a succession of accidents and injuries to both of claimant’s hands, resulting, in the opinion of the board, in the loss of the use of both hands. The left hand is the only one involved in this case, but a recital of the evidence in the record will give a better picture of the situation.
 

 Prior to May 7, 1938 the middle finger of his right hand was injured and part of it was amputated. Compensation was paid him for that. His next injury to his right hand was to his ring finger and he was paid compensation. for that. Then the index finger of the right hand and the rest of the middle finger were taken off by a piece of glass from a broken milk bottle, and he was paid compensation for that. Then apparently because of continuing pain in his hand and wrist, on July 25, 1939 he filed a petition to open the prior proceeding and showed the condition of his right hand to be: The thumb was intact, first finger had about one and onéhalf phalanges missing, second finger all missing, third finger one or one and one-half phalanges missing, fourth finger intact (40a). The matter came on for a hearing at the same time as the hearing on the present appeal and resulted in an award for the loss of the right hand against the then insurance carrier, State Workmen’s Insurance Fund, which was not appealed from and carries compensation until March 7, 1942.
 

 It appears from the evidence in the record that when Eureka Casualty Company became defendant’s insurance carrier on June 16, 1938, this claimant, in addi
 
 *477
 
 tion to the injuries to his right hand above stated, had previously received injuries to his left hand as follows: In 1917 the ring or third finger was broken while working for defendant, when his finger was caught between a ladder and the wágon; and in the early part of June, 1938 the same finger was caught between the in-gates of the truck or wagon and injured; in the winter of 1934 the first two fingers were frost bitten while gathering garbage. He was treated by a physician and taken to a hospital a number of times. Dr. Truxall removed the bone from the middle finger. He was away from work five weeks because of these two fingers. On January 27, 1939, while picking up rubbish, the fourth or little finger of his left hand was cut or scraped by a razor blade. It was treated by Dr. Cameron on January 29, 1939, by dressing and application of moist and dry warmth, but it had been infected and on February 25, 1939, the last two phalanges were amputated. The stump healed and he was discharged as to that injury on April 6, 1939. An open agreement of compensation as respects this injury was entered into on March 3, which set forth that his disability began on February 12, 1939. On April 10, 1939, a supplemental agreement was entered into, reciting that the disability had resolved itself into the loss of the little finger of the left hand, for which he was entitled to and was paid compensation for fifteen weeks, beginning February 12, 1939. Final receipt was approved July 5, 1939.
 

 On July 26, 1939, this petition to review was filed, alleging mistake and claiming compensation for the loss of the left hand, resulting in an award against Eureka Casualty Company of compensation for the loss of the left hand, or 200 weeks, less fifteen weeks already paid, to commence, March 7, 1942; which, on appeal to the court of common pleas, was affirmed. The defendant and its insurance carrier appealed.
 

 Dr. Cameron stated that when he treated the claimant’s cut finger on January 29, 1939, sensation in that
 
 *478
 
 finger was much impaired throughout and was almost absent in the distal phalange, so much so that when he amputated the two phalanges in February 1939 he did not use an anesthetic and there was very little bleeding. He said: “There was considerable diminished sensation in that finger. The amputation was almost painless.”
 

 The condition of the left hand when examined by Dr. Cameron on
 
 December 28,1939
 
 was described by him as follows:
 

 “The left hand showed the thumb was intact; first finger was dislocated, stiff and clubbed, [which we understand to mean thickened or deformed]; second finger much clubbed and part of the last phalanx missing; third finger, all of last phalanx missing and there was some stiffness; fourth finger, last two phalanges missing. There was much wasting on the back of the left hand where abnormal redness, coldness and glistening shiny skin were also noted, especially on the ulnar side. [There] was almost total loss of sensation on the ulnar side of the left hand, palm and dorsum, much diminished sensation from about the deltoid downward.”
 

 Now, it is not contended, and in any event there is no proof to support a contention, that the injuries above described to the first, second and third fingers were due to the cut on the little finger on January 27, 1939. Dr. Wallace, called as a witness by claimant, described the prior accidents to this hand and testified in relation to their condition on
 
 July 1939,
 
 as follows: “In the wintertime or whenever his hand gets cold, first two fingers become numb......there is an atrophy of the thenar eminence, that is between the base of the thumb and his metacarpal...... There is a flexion deformity of the phalangeal joint of the index finger, this finger cannot be brought up to a straight line ...... Middle phalangeal joint of the index finger is good. There is little deformity at the distal
 
 end
 
 of the index finger dorsally with very little motion. There is a deformity
 
 *479
 
 at the distal
 
 joint
 
 of the index finger dorsally, very little motion. There is a flexion deformity of the middle finger at the mid-phalangeal joint, flexion is good, and actively the joint can he brought almost to a straight line. There is a thickening of the joint. The distal phalanx of the middle finger seems to be about one-half gone, there is good flexion at the distal joint of the middle finger. The distal phalanx of the ring finger is practically gone, nail is still on. There is a limitation of flexion at the inner phalangeal joint and no extension to this joint. The little finger evidently has been disarticulated at the inner phalangeal joint, the thumb is apparently good. The metacarpal phalangeal joints of all the fingers of left hand are good. There is a definite loss of sensation to pin prick extending from the styloid process of the ulna along the lateral aspect of the hand to the point of amputation of the little finger.
 
 This loss of sensation is also present on the dorsum of the hand, extending over to the metacarpal for the ring finger. On the lateral surface of the ring finger there is a definite impairment of sensation. Impairment on the palmar surface is not entirely lost, the sensation is definitely diminished. Sot and cold sensation along the same area is lost.”
 
 (Italics supplied).
 

 By Mr. McLaughlin [counsel for claimant]:
 

 “Q. Did you have X-rays taken of the left hand, Doctor?
 

 “A. Yes, here’s the X-ray, shows that this is the left hand. Shows that the distal phalanx of the little finger is gone. Motion of the distal phalanx of the ring finger is gone and there is some crushing of the distal phalanx of the middle finger.”
 

 It is apparent that the injuries to the index, second and third fingers and the deformities, loss of flexion, loss of motion, atrophy of the thenar eminence, loss or diminishing of sensation in the palmar and dorsal region of the
 
 hand,
 
 as above described, were not caused by the accident to the little finger, but were the result of the
 
 *480
 
 prior accidents to those fingers. And in view of the fact that two days after the accident to the little finger there was little sensation in it, even though infected, it is only reasonable to conclude that the lack of sensation there, leading up towards the deltoid muscle in the ulnar region, was not due to the accident to the little finger but to the prior injuries to the hand, which had affected the sensation in the palmar and dorsal regions of that hand. To ascribe the loss of the use of the hand, under the circumstances in this case, to the accident to the little finger, is to go counter to the evidence and assume facts that are not proved and draw conclusions that are not warranted by the proofs. The burden was on the claimant to
 
 prove
 
 that the accident to the little finger
 
 caused
 
 the loss of use of the
 
 hand,
 
 not on the insurance carrier to disprove it.
 

 It is clear that on January 27,1939, just before he cut his little finger, the claimant had three injured and deformed fingers, the injuries to which had affected the
 
 hand
 
 as a whole, leaving only the thumb and little finger intact, and that sensation in the little finger had been diminished by the other injuries to the hand. The physician who attended him for that accident and amputated the two phalanges of the little finger, testified that the stump had healed, and there was no evidence that any part of it showed any subsequent infection.
 

 A man who has little more than a stump of a hand, outside of his thumb and little finger, as a result of prior accidents, cannot ask an insurance carrier to pay for the loss of the
 
 hand,
 
 because he accidentally loses the little finger remaining on the stump. If the accident is limited to the amputation of the finger, his compensation is limited to the loss of the finger. If an employee, who has previously lost one eye, accidentally loses his other eye, he is paid compensation for the loss of an eye — not for the loss of two eyes, even though he is then totally blind.
 
 Lente v. Luci,
 
 275 Pa. 217, 224, 119 A. 132. Any other construction would prevent the em
 
 *481
 
 ployment of persons who had been injured or lost certain members of their body.
 

 It is to be noted that the compensation awarded in section 308(c) of the Act of 1937 for the loss of a hand, 200 weeks, is the aggregate of the compensation awarded for the thumb and four fingers. Under the ruling in this case, a man might lose his index, second and third fingers and receive compensation for 110 weeks (50+40+20), and then on losing only the fourth or little finger, the compensation for which is fixed at 15 weeks in schedule 306(c), claim 200 weeks for the loss of his hand, because the loss of all
 
 four
 
 fingers might have left his hand useless. He would thus receive compensation for 310 weeks for the loss of his hand, 2,00 of which would be payable by the carrier liable only for the loss of the little finger. That cannot be. Especially so where, as here, different insurance carriers are liable for the different injuries.
 

 Much as we regret the unfortunate outcome, under the Workmen’s Compensation Act this appellant is liable only for the compensation payable for the loss of the little finger, in the absence of proof establishing that the loss of the use of the hand is due to the accident to the little finger and the consequent effects of the amputation of that finger and not to the prior accidents and injuries to the index, second and third fingers, which is lacking here. Mere conjecture, not based on evidence, is not sufficient.
 

 No reference was made in the record before us to section 306(g) of the Workmen’s Compensation Act, as amended by the Act of June 4, 1937, P. L. 1552, which was in force when the little finger of the left hand was cut. This was probably due to the fact that when this injury was received, the previous injuries to the
 
 right
 
 hand had not resulted in a “major permanent injury” ; and the previous injuries to the index, middle and ring fingers of the
 
 left
 
 hand were by the last paragraph of
 
 *482
 
 section 306(g) excluded from the definition of a “major permanent injury.” Accordingly, we have not passed upon it.
 

 The judgment is reversed.