Mosley *v.* Jones & Laughlin Steel Corporation,
Appellant.

Argued April 12, 1944. Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*William A. Challener, Jr.,* with him *Frank McC. Painter* and *William A. Challener,* for appellant.

*Harry Ravick,* for appellee.

OPINION BY RENO, J., September 27, 1944:

In this workmen's compensation case the referee and the board awarded claimant compensation for total disability from October 2, 1941, to December 2, 1941, found to have resulted from an injury suffered in the course of his employment on September 25, 1941. The employer has appealed from the judgment entered on the award by the court below, and has raised the single question whether there is sufficient legally competent evidence from which the compensation authorities could have concluded claimant's disability was caused by an accident.

Claimant testified that on September 25, 1941, he was operating a large power hook in defendant's rolling mills and that it was his duty to guide bars of steel as they emerged from a feed roll into a roughing roll by means of the hook. As he was so engaged, claimant stated, one of the steel bars unexpectedly jumped forward so as to strike the hook and knock it into his abdomen, leaving a blue mark or scar, and causing injuries described in the claim petition as a sprain of the back, side, and abdomen. Claimant reported the accident to his foreman and was immediately taken to the

emergency station at the plant where he testified he told the attending nurse that he had been injured by a blow from the hook. Claimant was then removed to the South Side Hospital in Pittsburgh where he said he stayed about six days before returning to his home. Claimant testified that after leaving the hospital he remained at home for about ten days, during which time he reported to Dr. Gatter, the physician at the mill, for periodic treatments, until Dr. Gatter sent him back to the hospital under the care of Dr. McGuire, the senior surgeon there. Upon completing a further hospitalization of about four weeks, claimant stated he again went home and continued his treatments at the mill dispensary, receiving liniment and pills. Dr. Gatter finally gave claimant a letter authorizing him to resume work and he returned to employment at the mill on December 2, 1941. Because of continuing pain in his abdomen, side, and back, claimant testified that he was unable to engage in the heavy work with the hook to which he was accustomed, but that he was confined to other and lighter jobs.

Dr. Gatter, called by claimant as for cross-examination over defendant's objection, testified that he had sent claimant to the hospital on September 25, 1941, to receive treatment for heat cramps, as claimant had originally complained of abdominal pain resulting from the heat of the mill. Dr. Gatter sent claimant to the hospital again on October 15, 1941, at Dr. McGuire's request, and he noted that claimant then asserted that his injuries had been received when he was jerked by a rope while at work. On October 28, 1941, Dr. Gatter diagnosed claimant's ailment as lumbago when an application for group disability insurance was being prepared, and on October 31, 1941, he again directed claimant to Dr. McGuire, observing this time that claimant attributed his injuries to a blow from the hook he had been operating the last day he had worked. Dr. Gatter testified that he had strapped claimant's abdomen and had

supplied him with liniment and pills on several occasions, but that he had not examined claimant after October 31, 1941, and that he could not remember what his physical condition had been at that time.

Dr. McGuire, also called by claimant as for cross-examination over defendant's objection, testified that claimant had been under his care in the hospital from September 25, 1941, to September 29, 1941, suffering from heat cramps, the effects of which had entirely passed by the latter date. Dr. McGuire next examined claimant on October 15, 1941, and testified that he had found him to be nervous and sedatives were recommended. Claimant was admitted to the hospital for observation from October 31, 1941, to November 22, 1941, and, as stated by Dr. McGuire, the only disability discovered at that time was an osteoarthritic condition in claimant's spine which appeared from an x-ray examination which was then made.

The attending nurse at the company dispensary, called by defendant, testified that claimant had told her, on September 25, 1941, that his pain resulted from excessive heat and that no blow from the hook had been reported.

The scope of the judicial function in this, as in all appeals from the findings of fact of the compensation authorities, is limited to a determination of whether the findings are supported by substantial competent evidence, and we are not at liberty to examine the record and arrive at an independent conclusion on the facts in accordance with what our views may be concerning the weight of the credible testimony. *Love v. Elizabeth Coal Co.*, 151 Pa. Superior Ct. 13, 28 A. 2d 726; *Wydra v. Phila. & Reading Coal & Iron Co.*, 153 Pa. Superior Ct. 529, 34 A. 2d 326. Claimant had the burden of proving an accidental injury in the course of his employment and that the injury was the cause of his disability, and if this burden has been carried by competent evidence, after all conflicts in the testimony

have been resolved in his favor, the award may not be disturbed. *Dover v. American Reduction Co.,* 146 Pa. Superior Ct. 474, 23 A. 2d 102; *Cutler v. Bergen & Essex Construction Co.,* 147 Pa. Superior Ct. 534, 25 A. 2d 75; *Bakaisa v. Pgh. & W. Va. R. R. Co.,* 149 Pa. Superior Ct. 203, 27 A. 2d 769.

Appellant contends that claimant should not have been permitted to call the two doctors in its employ as for cross-examination, since they were not adverse parties, although they were apparently hostile witnesses, and that having done so he is bound by their uncontradicted testimony. *Readshaw v. Montgomery,* 313 Pa. 206, 169 A. 135. From this it is argued that it must be accepted as a fact that claimant was suffering from heat cramps on September 25, 1941, and not from the effects of a blow to his abdomen. We need not decide whether the Act of May 23, 1887, P. L. 158, §7, as amended by Act of March 30, 1911, P. L. 35, §1, 28 PS §381, which permits calling adverse parties for cross-examination "in any civil proceeding", applies to hearings before referees in workmen's compensation. The physicians were not adverse *parties,* nor directors or officers of the defendant corporation, and, therefore, could not be called as for cross-examination. The short and sufficient answer to the contention is that the physicians' testimony was not uncontradicted, since claimant testified that his indisposition on that day had been the result of a blow received while at work. Where a claimant's case presents conflicting views on the causes of his disability, the referee and the board are free to adopt the explanation which seems to them to be the more credible one. *Savolaine v. Matthew Leivo & Sons,* 131 Pa. Superior Ct. 508, 200 A. 243. Claimant's testimony, if believed, was sufficient, when taken in conjunction with the inferences to which he is here entitled, to establish that he sustained an accidental injury for which he was immediately hospitalized on September 25, 1941.

Nowhere in the testimony is there a medical opinion expressing a belief on the exact cause of claimant's disability between the time of the accident and the date upon which he returned to work. Dr. Gatter certified on an insurance claim form on October 28, 1941, that claimant was suffering from lumbago, but he did not testify that he had examined claimant at that time, and he admitted that he did not recall what claimant's condition had been on October 31, 1941, the last day upon which an examination had been made by him. Dr. McGuire, when asked for his opinion, stated that he had thought, upon receiving the x-ray report, that a change was taking place in claimant's spine, but he further testified that he had no personal recollection of the nature of claimant's disorders. While there is thus a suggestion that a physical process was taking place in claimant's body, this fact was by no means proved by the standard required of medical testimony (*Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256) and even had the testimony measured up to the necessary qualitative standard the compensation authorities were not obliged to believe that that condition was the sole cause of the disability during the particular period included in the compensation award. Furthermore, if the disability was brought about by an accidental injury in the course of claimant's employment, the fact that he had a chronic ailment rendering him more susceptible to injury than the ordinary person will not bar the right to compensation. *Strode v. Donahoe's Fifth Avenue Store*, 127 Pa. Superior Ct. 231, 193 A. 86; *Bepler v. State Workmen's Ins. Fund*, 137 Pa. Superior Ct. 287, 8 A. 2d 727. The causative connection found to exist between the accident and the disability must therefore be sustained, if at all, on evidence in the record other than the testimony of the medical witnesses.

There were circumstances which were adequately established and from which, manifestly, the finders of

fact inferred the causal chain. Claimant received a blow so severe as to require him to stop work and undergo immediate hospital treatment. He received continuous medical attention, including strapping and liniment, for approximately two months, during which time his employer's plant physician withheld an authorization to return to work. When claimant was permitted to go back to the mill he was unable to resume the heavy labor in which he was engaged at the time of the accident. We think, under these facts, a medical opinion was not an indispensable predicate for a compensation award. "Compensation authorities are not required, in all cases, to depend solely on expert medical testimony. Where there is a serious question whether the disability is the result of an accident, unequivocal medical testimony is necessary. But, in the case at bar, the claimant had been steadily employed in heavy, manual work until the accident, which unquestionably occurred and resulted in injuries. It is logical to assume, under the facts presented, that his condition is attributable to the injuries. It has frequently been held that where the disability complained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the entire absence of expert opinion: Utzman v. Penna. Rubber Co. et al., 96 Pa. Superior Ct. 463; Connor v. P. R. T. Co., 98 Pa. Superior Ct. 250; Paul et al. v. Atlantic Ref. Co., 304 Pa. 360, 156 A. 94": *Mohr v. Desimone & Sayers*, 110 Pa. Superior Ct. 44, 49, 167 A. 504. See, also, *Hanlon v. Gulf Refining Co.*, 115 Pa. Superior Ct. 315, 175 A. 724; *Marshall v. Pittsburgh*, 119 Pa. Superior Ct. 189, 180 A. 733.

It may not be amiss also to point out that defendant did not attempt to establish by the doctors or the nurse who had claimant in their care that there was no bruise or scar on claimant's abdomen when he was first brought to them for treatment, nor was any serious attempt

made to contradict claimant's theory of the case by showing by these witnesses that claimant's disability was properly traceable to a cause other than that alleged. Since the testimony of these witnesses was within defendant's control, the referee and the board were justified in assuming that, had it been produced, it would have been unfavorable to defendant. *Marshall v. Pittsburgh,* supra; *Mahoney v. F. M. Roofing Co.,* 135 Pa. Superior Ct. 498, 5 A. 2d 812.

The award was based upon sufficient competent testimony and may not be set aside.

Judgment affirmed.