McCleary *v.* Pennsylvania Electric Company et al., Appellants.

Argued April 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Thomas A. Swope,* with him *Shettig, Swope & Shettig,* for appellants.

*Andrew J. Gleason,* with him *Ernest F. Walker,* for appellee.

OPINION BY GUNTHER, J., June 11, 1957:

This is an appeal from the judgment of the Court of Common Pleas of Cambria County in sustaining a Workmen's Compensation award. The wife claimant filed a fatal claim petition for compensation for and in behalf of herself and four minor children, dependents of the deceased employe. The claimant alleged that her husband's death resulted from injuries sustained in a fall while in the employ of the defendant. The appeal is made by the defendant, Pennsylvania Electric Company and its insurance carrier, Utilities Mutual Insurance Company.

Newton J. McCleary, the decedent, was employed as a meter reader for the Pennsylvania Electric Company in Johnstown. On Friday, May 7, 1954, around 1:00 P.M., while engaged in the customary duties of his employment, he slipped and fell on an uneven brick

sidewalk that was wet due to a recent rain, and he sustained an injury to his back from a flashlight which he carried in his hip pocket. He continued to work that day but in the evening he complained to his wife of pains in his back in the area of the bruise sustained and had difficulty in rising from a chair. The pain continued over the weekend and he attempted to relieve it by taking aspirins, anacin and applying heat. On Monday, May 10, 1954, McCleary went back to work and reported to his superiors that he had wrenched his back the Friday before and asked that he be taken to a hospital. That afternoon, a fellow worker drove him over to Mercy Hospital where he was examined by Dr. John J. Silenskey, an orthopedic surgeon, who found a red area in the lumbar region of decedent's back. X-rays were taken but no significant findings were disclosed. No treatment was prescribed except complete rest and decedent returned home.

On Tuesday and Wednesday, May 11 and 12, 1954, McCleary did not report for work. On Wednesday afternoon, he was driven to the hospital by his wife. He complained of the sharp pain in his back and was again examined by Dr. Silenskey who ordered him confined until May 15, 1954, at which time he was discharged. The treatment consisted of bed rest and sedation to relieve the pain. After returning home, he began to experience sharp pains in his back which radiated down to his legs. On Sunday, May 16, 1954, Dr. T. E. Seifert was summoned to McCleary's home and he administered morphine and heat. This did not reduce the pain and later that afternoon, upon being recalled, Dr. Seifert returned decedent to Mercy Hospital where he remained until May 24, 1954, the date of his death. At the hospital, he was under the care of Dr. Eugene Raymond, with whom Dr. Seifert was associated. On May 18, 1954, decedent began to com-

plain of pain in his chest. On May 19, 1954, a mylogram was performed and X-rays again taken which were negative for any evidence of intervertebral disc lesion. He was given diathermal treatments and his condition improved somewhat. On May 24, 1954, he was given permission by Dr. Seifert to go to the bathroom once each day. About 3:00 P.M. that afternoon, decedent went to the bathroom and while there got sick and weak. He returned to his bed, rang for a nurse who found him in a state of collapse, and Dr. Raymond was immediately summoned. The nurse found decedent without pulse and blood pressure. Oxygen, glucose, metrasol and other drugs were immediately used to overcome the collapse. At 3:57 P.M., decedent was able to ask: "Am I going to make it, Doctor?" Dr. Raymond replied: "Newton, keep your chin up, you're doing all right." About a minute thereafter decedent turned his eyes up, went unconscious, breathed for another ten minutes, and then died at approximately 4:10 P.M. The cause of death was acute circulatory collapse.

There was evidence produced both by decedent's wife and Dr. Raymond that, prior to the fall, decedent was in a state of good health, although evidence was given by McCleary's sister that during the month of March, 1954, decedent had come to her home and complained of "blacking out" and falling. A post-mortem examination was allowed by claimant and performed by Dr. H. B. Anderson. The autopsy report indicated no significant pathological findings.

On May 16, 1955 the referee made his findings, conclusions and award which were affirmed by the Board. Appellants filed an appeal from the decision of the Board to the Court of Common Pleas of Cambria County which court affirmed the decision and award. The sole question raised on this appeal is whether the evi-

dence produced before the referee support his findings and that of the Board to the effect that there was a causal connection between the back injury suffered by decedent and his subsequent death of acute circulatory collapse.

A workmen's compensation award, supported by substantial and legally competent proof, has the same weight as a jury's verdict. *Dennis v. Jarka Corp. et al.,* 182 Pa. Superior Ct. 498, 127 A. 2d 803; *Frick v. Pittsburgh School District,* 167 Pa. Superior Ct. 431, 74 A. 2d 659. We must review the evidence in the light most favorable to the claimant, and she is to be given the benefit of inferences reasonably deducible from it. *Dennis v. Jarka Corp. et al.,* supra; *Lambing v. Consolidation Coal Co.,* 161 Pa. Superior Ct. 346, 54 A. 2d 291.

To secure compensation there must be both an accident and an injury. On this appeal, it is apparently conceded that there was an accident and that this accident occurred during the course of employment of the decedent. However, an injury cannot be inferred simply because there was an accident. *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 3 A. 2d 377; *Washko v. Ruckno, Inc.,* 180 Pa. Superior Ct. 606, 121 A. 2d 456. What, then, is the evidence from which a reasonable conclusion can be drawn that an injury did result from the accident? Decedent's wife testified that when decedent left home on the morning of the accident, he appeared to be in fine health and that when he returned the same evening he had difficulty in getting in and out of a chair and difficulty in walking around. She further stated that on the night of the accident, decedent had difficulty in trying to sleep. The next day, she noticed his condition getting worse and that her husband was taking aspirins and anacin to relieve the pain which bothered him. On Monday, May 10, 1954, when he reported for work, he com-

plained to his superiors of his injury to his back. George E. Williams, a fellow employe, upon instructions of his superior, Mr. Schultz, drove him to the Mercy hospital. Dr. Silenskey testified that on May 10, 1954, he saw the decedent who gave him a history that he slipped and fell while working on Friday, May 7, 1954 and that he developed a pain in his back and down his right leg. Upon examination Dr. Silenskey testified he found some tenderness over the lower lumbar spine and a red area about the middle, and on the right, in the lumbar area. James A. Eldridge, claims adjuster for defendant company, testified that on May 12, 1954, after a call from Mercy Hospital, he and Mr. Schulz went to the hospital and visited decedent. At that time decedent reported that he had fallen on Wood Street on May 7, 1954, injuring his back. Dr. Seifert testified that he first examined decedent on May 16th, at home. At that time, he was in acute pain, had spasms in the lumbar-sacral muscles and a deep abrasion over the second lumbar vertebra about two centimeters in diameter, secondarily infected.

From this testimony, it was reasonable to conclude that there was injury occasioned by the fall. The next inquiry, therefore, was to determine the causal connection of this fall and injury with the cause of ultimate death. Dr. Raymond testified that the primary cause of death was acute circulatory collapse and that the secondary cause was unknown. Dr. Seifert, when asked if the accident contributed to, or precipitated in the death, answered as follows: "I could answer it best by saying that I certainly can't prove that the accident was not a contributing factor in his death, and therefore, feel that it probably was, but I can't, once again, state that this is a one-two-three clear-cut case." Dr. Silenskey testified that in his opinion the fall and the injuries received therefrom had no causal connection

with his ultimate death but could not determine what caused the acute circulatory collapse.

We are agreed that were this case to be decided purely from the medical testimony produced as to a causal connection between the injuries received and ultimate death, the award would have to be reversed. However, we recognize that even medical experts can and do differ on the question of causal connection between an accident and the ensuing death. If the testimony as to the causal connection is conflicting, the issue is one of fact for the compensation authorities. *Irvin v. Plymouth Meeting Rubber Division Linear, Inc.,* 182 Pa. Superior Ct. 280, 126 A. 2d 491; *Nelson v. Borough of Greenville,* 181 Pa. Superior Ct. 488, 124 A. 2d 675. There are instances, however, when the cause of death cannot with certainty be pinned to any one cause which may prove or disprove relationship with injury. In such situations, even where no professional opinion is expressed as to causation, where the death or disability is so immediate, direct and apparently the natural and probable cause of the accident, such medical opinion is not a prerequisite in order to sustain the finding that the death or disability resulted from the accidental injury. The Workmen's Compensation Act is a remedial statute and is to be liberally construed in order to accomplish its broad humanitarian purpose. *Allen v. Patterson-Emerson-Comstock, Inc.,* 180 Pa. Superior Ct. 286, 119 A. 2d 832. Proof of causal connection does not depend solely upon medical testimony: *Heyler v. Sullivan and Sons Manufacturing Corp.,* 172 Pa. Superior Ct. 615, 94 A. 2d 95; *Mosley v. Jones and Laughlin Steel Corp.,* 155 Pa. Superior Ct. 598, 39 A. 2d 161; *Benci v. Vesta Coal Co.,* 131 Pa. Superior Ct. 435, 200 A. 308; *Witt v. Witt's Food Market,* 122 Pa. Superior Ct. 557, 186 A. 275; *Mohr v. Desimone and Sayers,* 110 Pa. Superior Ct. 44,

167 A. 504; *Paul v. Atlantic Refining Co.,* 304 Pa. 360, 156 A. 94.

On the day of the accident, decedent went to work in apparent good health. The medical history shows a continuity of pain and disability down to the date of death. The short period of time between the injury and death, with constant pain and practically constant medical attention, can logically lead to no other conclusion except that death was the natural and probable result of the injury. The post-mortem examination revealed nothing upon which any pre-existing condition might be attributed as causing death. Medical opinion gives us no clue as to what caused the acute circulatory collapse. Under the peculiar facts and circumstances of this case, therefore, we cannot say that the compensation authorities did not base their findings upon competent evidence that death was the natural and probable result of the injuries sustained while decedent was in the course of his employment.

We have reviewed the authorities cited by appellants and find that all of them are readily distinguishable from the instant case. Most of the cases cited involved situations where death occurred a considerable length of time from the date of accident to the date of disability or death. Appellants have also cited the case of *Washko v. Ruckno, Inc.,* supra, which is somewhat similar to the facts of the instant case. However, in that case no autopsy was performed to discount the possibility that the decedent could have died of a pre-existing heart condition. The case of *Dennis v. Jarka Corp. et al.,* supra, cited by appellant is likewise distinguishable for the reason that death occurred twenty-two months after the injury and the symptoms of tuberculosis did not appear until a year after the fall was suffered, particularly when no evidence was produced that the deceased ever suffered a trauma to the chest.

**Judgment affirmed.**